**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:23-cv-02186-SHL-cgc |
| DENNIS MICHAEL PHILIPSON, | ) ) | |
| Defendant. | ) ) | |

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, DENYING DEFENDANT'S REQUEST TO CONTINUE MEDIATION, REQUIRING DEFENDANT TO RESPOND TO MOTION FOR SANCTIONS OF JUDGMENT AND PERMANENT INJUNCTION, AND FINDING DEFENDANT IN CONTEMPT**

Before the Court are multiple motions.  First is Plaintiff Mid-America Apartment Communities, Inc.'s ("MAA") Motion for Contempt and Sanctions for Failure to Respond to Subpoena (the "Motion for Contempt"), filed June 14, 2023.  (ECF No. 19.)  In the Motion for Contempt, Mid-America asserts that <u>pro se</u> Defendant Dennis Michael Philipson, a former MAA employee, was served with a subpoena on April 11, 2023, but "failed to respond to the Subpoena or timely file objections to the documents it seeks."  (<u>Id.</u> at PageID 276.)  MAA contends that this failure warrants holding him in contempt and awarding its attorneys' fees.

Second is MAA's motion for preliminary injunction ("Motion for Preliminary Injunction"), filed January 25, 2024.  (ECF No. 81.)  The Court set a status conference regarding the motion for Thursday, February 8, 2024.  (ECF No. 88.)  Mr. Philipson failed to attend the status conference, prompting the Court to enter an Order for Defendant to Show Cause, by February 22, 2024, as to "why he did not appear for the status conference and why the Court

should not hold him in contempt." (ECF No. 90 at PageID 1473.) Mr. Philipson did not respond to the Order.

Mr. Philipson also missed his deadline to respond to the Motion for Preliminary Injunction, prompting the Court to enter a second show cause order. (ECF No. 91.) That Order gave Mr. Philipson twenty-one days to demonstrate "whether there is a dispute as to any of the facts in MAA's motion, and to otherwise respond to the motion." (Id. at PageID 1476.) The Court warned Mr. Philipson that if he failed to respond to the "Order, in writing and on the docket by March 5, 2024, the Court will consider the facts in the motion undisputed, will not conduct an evidentiary hearing, and will proceed to evaluate the questions of law at issue in the motion." (Id.) Mr. Philipson never responded to that Order or otherwise respond to the motion for preliminary injunction.

The final motion is MAA's Motion for Sanctions of Judgment and Permanent Injunction Against Philipson ("Motion for Permanent Injunction"), filed March 6, 2024. (ECF No. 92.) That motion seeks default judgment against Mr. Philipson, a permanent injunction and damages.[1]

For the following reasons, MAA's  Motion for Contempt and Sanctions for Failure to Respond to Subpoena is **DENIED AS MOOT** and its motion for preliminary injunction is **GRANTED IN PART AND DENIED IN PART**, consistent with the terms described in this Order. The Court also **FINDS MR. PHILIPSON IN CONTEMPT** based on his repeated

---

[1] Local Rule 7.2(a) requires responses to most types of motions, including motions for permanent injunctions, within fourteen days. An additional three days are added when service is conducted by mail (see Fed. R. Civ. P. 6(d)), and, if the response is due on a Sunday, the deadline extends to the next day (see Fed. R. Civ. P. 6(a)(2)(C)). MAA filed its Motion for Permanent Injunction on March 6, 2024. **Under the applicable rules, Mr. Philipson's response is due March 25, 2024.**

flouting of this Court's Orders and rules, and sets a hearing on that finding, as is explained in more detail below.

Finally, Mr. Philipson is also **DIRECTED** to respond to the Motion for Permanent Injunction by his deadline to do so.  If Mr. Philipson fails to timely respond by his deadline, the Court will consider the motion undisputed and will rule accordingly.

## BACKGROUND

MAA originally filed its lawsuit against unnamed Defendants John Does #1-2 on April 3, 2023, alleging claims under the Lanham Act, 15 U.S.C. § 1051 et seq., the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), common law infringement and unfair competition and the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-104 et seq. (ECF No. 1 at PageID 1.)  On April 11, 2023, MAA served Mr. Philipson with a subpoena to produce six categories of documents.  (See ECF Nos. 19 & 19-1.)  Mr. Philipson filed a motion to quash the subpoena on April 17, 2023.  (ECF No. 10.)[2]  The Court entered an order on May 16, 2023, denying the motion to quash.  (ECF No. 15.)

On June 13, MAA filed its Amended Complaint, which replaced the John Doe Defendants with Mr. Philipson.  (ECF No. 16.)[3]  The Amended Complaint alleges that Mr. Philipson, following his resignation from MAA, engaged in a variety of tortious activities, mostly online, as part of a "long and relentless vendetta against MAA."  (ECF No. 16 at PageID 177.)  The claims in the Amended Complaint include those set forth in the original complaint, as well as additional claims for, among other things, unfair competition, misappropriation,

---

[2] Mr. Philipson's motion to quash was also filed in the miscellaneous case 2:23-mc-00015-SHL-atc.

[3] A summons was issued the day the Amended Complaint was filed (ECF No. 18), and Mr. Philipson was served the next day (ECF No. 20).

deceptive trade practices, fraudulent misrepresentations, defamation, tortious interference with prospective business relationships, deceit, negligence per se related to acts of cyber harassment, and claims under the Tennessee Personal and Commercial Computer Act of 2003.  (See id.)

The next day, MAA filed the Motion for Contempt related to the Rule 45 subpoena for documents, seeking a contempt finding against Mr. Philipson, as well as an award of attorneys' fees as a sanction under Federal Rule of Civil Procedure 37(a)(5)(A).  (ECF No. 19.)  Mr. Philipson also did not respond to the Motion for Contempt, prompting the Court to enter an Order to Show Cause on July 10, 2023.  (ECF No. 21.)  Mr. Philipson responded to that Order on July 31, 2023.  (ECF No. 22.)  His response provided background information as to his previous interactions with MAA and asserted that the case should be dismissed.  (Id. at PageID 299.) Only a portion of his filing responded to the Motion for Contempt; Mr. Philipson appeared to assert that he misplaced a thumb drive containing materials that might have been responsive to the subpoena.  (Id.)

The Court addressed the Motion for Contempt with the Parties at the September 11, 2023 scheduling conference.  (ECF No. 45.)  Then, on October 4, 2023, the Court entered an Order Requiring the Plaintiff to File Notice in which it directed MAA to clarify what, if any, issues remained outstanding regarding the Motion for Contempt.  (ECF No. 57.)

Philipson filed a notice the next day in which he asserted that he "conducted a thorough review of all documents and emails in my possession to find anything responsive to Mid-America's subpoena" and the only potentially relevant material was a screenshot from the LinkedIn page of Robert Delpriore, counsel for MAA."  (ECF No. 58 at PageID 579.)  He declared that he has "no additional documents in my possession that are responsive to the subpoena."  (Id.)

MAA filed a notice on October 11, 2023, standing by its Motion for Contempt.  (ECF No. 62.)  MAA asserts that, "despite [Mr. Philipson's] representations and having nearly six months to do so, Mr. Philipson has failed to produce responsive documents and thus is in contempt of this Court's subpoena."  (Id. at PageID 596.)  MAA "requests that this Court find that Defendant is in contempt of the subpoena, order him to comply with it, and award Plaintiff its reasonable attorney fees for bringing the instant motion."  (Id.)

On November 8, 2023, the Court entered an Order referring the matter to Chief Magistrate Judge Tu M. Pham for mediation.  (ECF No. 71.)  Judge Pham held a status conference on November 14, 2023, which Mr. Philipson failed to attend, and then held the mediation on November 29, 2023, which Mr. Philipson also did not attend.  (ECF Nos. 72 & 74.)  Three days later, Mr. Philipson filed a request seeking to continue the mediation, explaining that he "inadvertently missed a mediation session" and "respectfully request[ed] that any mediation be deferred until early February."  (ECF No. 75 at PageID 753.) [4]  The next day, December 3, 2023, Mr. Philipson filed a motion and amended motion for reasonable accommodations.  (ECF Nos. 76 & 77.)  MAA opposed the motion.  (ECF No. 79.) [5]

MAA's Motion for Preliminary Injunction—whose facts are now undisputed as set forth below—outlines the myriad activities Mr. Philipson has engaged in that warrant the extraordinary relief that it seeks.  The behaviors include, among other things, publishing

---

[4] Mr. Philipson's request is not well taken and is **DENIED**.  Mr. Philipson's request for continuation fails to justify his repeated waste of judicial resources, does not sufficiently explain his absence from either event and, given his behavior to this point in the litigation, the Court is not convinced that Mr. Philipson would attend another mediation if one were set.

[5] Both of those motions were sealed after they were submitted, per an email request from Mr. Philipson, in which he also asserted that "ADA laws may not apply to federal courts" and "kindly request[ed] that you forward this request to the appropriate person responsible for assisting with accommodation requests within the Tennessee court system."  The Court did not take any further action with Mr. Philipson's request, and considers the motions withdrawn.

defamatory and fraudulent and deceitful materials about it and its employees via mass emails and elsewhere, electronically stalking them, and applying for credit cards in the names of MAA's counsel.  For instance, in early January 2024, Mr. Philipson sent multiple emails to thousands of people that contained misrepresentations and innuendo about MAA.  (See ECF Nos. 83-1, 83-2, 83-3.)[6]  Mr. Philipson also left numerous bizarre Google reviews of businesses located near MAA's headquarters and the homes of its employees, which included references to personal information about those employees "that was not generally known and indicated to them that Philipson was listening in on conversations, possibly reading their mail and emails, and stalking them, either via the computer or in person."  (ECF No. 82 at PageID 906.)

## ANALYSIS

### I.    Motion for Contempt

MAA issued a subpoena to Mr. Philipson pursuant to Federal Rule of Civil Procedure 45 before he was a named party in this action.  Rule 45 governs subpoenas and allows a party to command a nonparty to produce documents or tangible things.  Fed. R. Civ. P. 45(a)(1).  Under the Rule, the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."  Fed. R. Civ. P. 45(g).  Ultimately, Rule 45(g) provides "[t]he only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum."  Weems v. Omni Hotels Mgmt. Corp., No. 3:21-CV-00293, 2022 WL 989144, at *1 (M.D. Tenn. Mar. 31, 2022).

---

[6] Separately, one of MAA's attorneys was signed up for MAA's investor email alert, without her permission or request, which MAA asserts was done by Mr. Philipson.  (ECF No. 82 at PageID 911.)  One of the Court's law clerks has also been signed up for MAA's investor email alert without his permission or request.

Whereas Rule 45 governs the issuance of subpoenas to non-parties, "[t]he Rules anticipate that production of documents and things from parties will be accomplished through Rule 34." Elvis Presley Enters., Inc. v. City of Memphis, Tenn., No. 2:18-cv-02718-SHM-atc, 2020 WL 4015476, at *12 (W.D. Tenn. July 16, 2020). See also Reynolds & Reynolds Co., Inc. v. Alan Vines Auto. of Jackson, LLC, No. 1:20-mc-0003-STA, 2020 WL 5797923, at *7 (W.D. Tenn. Sept. 28, 2020) ("Generally speaking, a party can serve non-parties with requests for production by subpoena under Rule 45, and not through a Rule 34 request propounded on an actual party to the action.") (citations omitted).

The unusual procedural circumstances at play when MAA filed its Motion for Contempt must be considered in evaluating the motion. At the time MAA issued its subpoena to Mr. Philipson in April 2023, the Defendants were listed as John Doe 1 and 2. (See ECF Nos. 1 & 19-1.) MAA filed its amended complaint on June 13, 2023, naming Mr. Philipson as the lone Defendant. (ECF No. 16.) Had Mr. Philipson been a party to the case at the time MAA issued its subpoena, it is likely that MAA would have sought the documents under the discovery mechanisms applicable to parties. See e.g., Fed. R. Civ. P. 31–36.[7] In fact, in its Motion for

---

[7] Courts and legal scholars are split on whether Rule 45 subpoenas can be issued to parties to a case. See, e.g., Olmstead v. Fentress Cnty., Tenn., No. 2:16-CV-00046, 2018 WL 6198428, at *3 (M.D. Tenn. Nov. 28, 2018) (collecting cases to illustrate that the majority view is that Rule 45 can be used against parties and non-parties); Baggett v. Schwan's Home Serv., Inc., No. 3:04-CV-316, 2005 WL 8162577, at *1 (E.D. Tenn. Oct. 31, 2005) (assuming, without deciding, that a Rule 45 subpoena could be served on a party, but noting that even "two of the leading treatises on federal civil procedure hold different views on the issue," citing Moore's Federal Practice and Wright & Miller's Federal Practice and Procedure).

Courts that find Rule 45 appropriate for use against parties to a case typically do so with the caveat that the rule cannot be used to circumvent the discovery deadlines otherwise in place, as "[s]ubpoenas issued under Rule 45 are a discovery device subject to the same deadlines as other forms of discovery, including deadlines in a court's scheduling order." Elvis Presley Enters., Inc. v. City of Memphis, Tenn., No. 2:18-cv-02718-SHM-dkv, 2020 WL 4015476, at *12 (W.D. Tenn. July 16, 2020). The scheduling order deadlines are not implicated here.

Permanent Injunction, MAA attached the first set of document requests it propounded upon Mr. Philipson on September 15, 2023 (ECF No. 92-3), which contained a significant amount of overlap with the document requests included in its earlier subpoena (see ECF No. 19-1), and MAA also indicated it submitted a second set of document requests upon Mr. Philipson on October 16, 2023 (ECF No. 92 at PageID 1479), which might have contained additional redundancies.

The Court is dubious that Mr. Philipson has produced all of the documents that might be responsive to the subpoena.  However, given the circumstances here, which include the fact that Mr. Philipson became a party to the case after having received the subpoena, the overlapping nature of materials MAA sought through the subpoena and the document requests, the fact that a finding of contempt is the lone sanction available under Rule 45, as well as the fact that MAA can—and has sought—additional sanctions against Mr. Philipson for his failure to respond to the discovery requests propounded upon him after he became a party to this case in its Motion for Permanent Injunction, the Court **DENIES AS MOOT** MAA's Motion for Contempt.  This ruling in no way excuses Mr. Philipson's failure to provide documents responsive to the subpoena to the extent that he had or has responsive documents, and makes no determination as to whether, or what, judgment or sanctions Mr. Philipson may be subject to under MAA's Motion for Permanent Injunction.[8]  Mr. Philipson is also **ORDERED**, consistent with his

---

[8] Mr. Philipson informed MAA's counsel that, "ever since the complaint was served to me by MAA" he "diligently ensured to preserve all pertinent information."  (ECF No. 62-4 at PageID 613.)  But it may be problematic if Mr. Philipson did not diligently preserve all pertinent information even prior to being served with the complaint.  After all, Mr. Philipson was served with the subpoena on April 11, 2023, and, "[a]s a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'"  John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008) (quoting Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001)).  Mr.

obligations under Local Rule 7.2(a)(2), to respond to MAA's Motion for Permanent Injunction by the March 25, 2024 deadline.

## II.   Motion for Preliminary Injunction

Based on a number of claims, MAA also seeks a preliminary injunction.  There are four factors the Court must balance when determining whether a plaintiff is entitled to a preliminary injunction: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued; (3) whether the issuance of a preliminary injunction will cause substantial harm to third parties; and (4) whether the public interest would be served by the issuance of a preliminary injunction.  G.S. by & through Schwaigert v. Lee, 560 F. Supp. 3d 1113, 1121 (W.D. Tenn. 2021) (citing Sandison v. Mich. High Sch. Athletic Ass'n, 64 F.3d 1026, 1030 (6th Cir. 1995)).  The Court is not required to explicitly consider each of these factors if one is dispositive.  Robinson v. Tansley, No. 2:23-cv-02589-SHL-atc, 2023 WL 6613099, at *2 (W.D. Tenn. Oct. 10, 2023) (quoting Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)).

MAA asserts in its Motion for Preliminary Injunction that "[t]he Court's immediate protection is necessary because Defendant's harassment, defamation, and deceit have been ongoing but now are sharply escalating."  (ECF No. 82 at PageID 902.)  According to MAA, Mr. Philipson has "taken steps to destroy MAA and its relationships with its employees and the

---

Philipson, though not yet a party to the lawsuit, was on notice that the evidence he had may be relevant to future litigation at least as of April 11, 2023, if not sooner.  See In re Black Diamond Min. Co., LLC, 514 B.R. 230, 237 (E.D. Ky. 2014) (noting that an obligation to preserve evidence arises "when a party should have known that the evidence may be relevant to future litigation," which "can, and often does, happen earlier than when the actual lawsuit is filed.") (Thapar, J.) (citations omitted).

community," and his "continuing and escalating stalking and cyber-harassment indicate a dangerous individual and MAA, its employees, and counsel seek protection from him." (<u>Id.</u>) To that end, MAA asserts that, "it has a likelihood of success on the merits of its claims for negligence <u>per se</u> for Philipson's repeated violations of the federal law that prohibits stalking (18 U.S.C. §§ 2261a), for common law deceit, and for defamation." (ECF No. 81 at PageID 890–91.)

Mr. Philipson failed to respond to the Motion for Preliminary Injunction, prompting the Court to issue its February 13 Order to Show Cause, warning Mr. Philipson that, absent a response, the facts as alleged in the motion would be deemed undisputed, leaving the Court to conduct a legal analysis of the claims therein. It does so now, evaluating the motion under the relevant four factors.

**A. Substantial Likelihood of Success on the Merits**

MAA asserts that it is likely to succeed on the merits of its claims for negligence <u>per se</u>, deceit and defamation, based on Mr. Philipson's use of false and defamatory information in violation of the federal crime of cyberstalking, as well as his distribution of defamatory emails. (ECF No. 82 at PageID 915.) Each claim is considered below.

*1. Negligence <u>Per Se</u>*

MAA's claim for negligence <u>per se</u> is tied to its allegations that Mr. Philipson engaged in cyber harassment in violation of 18 U.S.C. § 2261A. (<u>Id.</u> at PageID 915–19.) That criminal statute prohibits the use of "any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that . . . places that person in

reasonable fear of the death of or serious bodily injury to a person," their immediate family member or their spouse or intimate partner.  § 2261A(2)(A).[9]

Under Tennessee law, negligence per se is not a stand-alone cause of action, but instead "is a form of ordinary negligence that enables the courts to use a penal statute to define a reasonably prudent person's standard of care." Rains v. Bend of the River, 124 S.W.3d 580, 589 (Tenn. Ct. App. 2003) (citations omitted).  The doctrine of negligence per se does not "automatically create[] a private negligence cause of action for the violation of every statute," and "arises when a legislative body pronounces in a penal statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct." Id. (citations omitted).  "Plaintiffs in negligence per se cases must still establish causation in fact, legal cause, and damages." Id. (citations omitted).

MAA alleges that Mr. Philipson is liable for negligence per se for a variety of actions, including "stalk[ing] MAA employees by visiting and leaving dozens of creepy and strange reviews via the internet on establishments near their homes, including locations where the employee's children stay after school or visit frequently." (ECF No. 82 at PageID 916.)  Those reviews contained references to information that Mr. Philipson "had no legitimate basis for knowing, other than by impermissibly stalking, following, or shadowing" those employees.  (Id.)  Mr. Philipson also set up social media accounts for MAA employees without their permission and used a computing device and the Internet to, among other things: attempt to breach MAA's

---

[9] On its own, § 2261A does not create a private right of action.  See Hopson v. Commonwealth Att'ys Off., No. 3:12-CV-744-M, 2013 WL 1411234, at *3 (W.D. Ky. Apr. 8, 2013) (collecting cases standing for the proposition that "[i]t is clear that § 2261A does not provide for a private cause of action or civil remedies").

systems, apply for credit cards in the names of one of MAA's attorneys and her husband, set up a website that infringed on MAA's intellectual property and create fake LinkedIn accounts to spread false and defamatory information about MAA and to confuse its customers and employees.  (Id.)

MAA has demonstrated that it is likely to be able to show that Mr. Philipson's actions were the cause in fact and legal cause of the damages it and its employees sustained.  His stalking has caused emotional harm to MAA's employees (see, e.g., Decl. of Jay Blackman (ECF No. 84)), and has caused MAA to incur significant costs, including having to purchase credit monitoring services for its employees and outside counsel, employing cyberstalking experts to trace Mr. Philipson activities, and incurring significant attorneys' fees to address Mr. Philipson's trademark infringement (ECF No. 82 at PageID 919).  Moreover, MAA has demonstrated that, absent the extraordinary relief it seeks here, it, its employees and its counsel will continue to experience fear, intimidation, reputational damage and substantial emotional distress.  Its likelihood of success on the merits of its negligence per se claim related to Mr. Philipson's violation of the federal cyberstalking laws is clear.

   *2.  Common Law Deceit*

Traditionally, Tennessee law defined common law fraud and deceit as follows:

> When a party intentionally misrepresents a material fact or produces a false
> impression in order to mislead another or to obtain an undue advantage over him,
> there is a positive fraud.  The representation must have been made with
> knowledge of its falsity and with a fraudulent intent.  The representation must
> have been to an existing fact which is material and the plaintiff must have
> reasonably relied upon that representation to his injury.

First Nat'l Bank of Louisville v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991.)  Today, the "common-law claim for intentional misrepresentation is the successor to the common-law action for deceit."  Hodge v. Craig, 382 S.W.3d 325, 342 (Tenn. 2012) (citing First Nat'l Bank of

Louisville, 821 S.W.2d at 927).  The elements of intentional misrepresentation are similar to

common law deceit and include the following:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

Hodge, 382 S.W.3d at 343.

Here, MAA asserts that Mr. Philipson is liable for common law deceit based on his

purchase of an internet domain, falsely representing himself as "Piper and Savage," and emailing

more than 1,200 MAA employees with false and defamatory information that produced an untold

number of false impressions.  (ECF No. 82 at PageID 920–21.)  MAA asserts that Mr. Philipson

made the representations with fraudulent intent and that "there is imminent danger" that the

employees who have received these emails "will rely on these statements, causing them to leave

or lose confidence in the company, which can be devastating to MAA's reputation and employee

relationships."  (Id. at 921.)

What MAA has failed to demonstrate, however, is that it relied upon the false

representations to its detriment, a necessary element of its common-law fraud and deceit claim.

Its employees might have relied upon the misrepresentations, and their reliance on those

misrepresentations might damage the goodwill MAA enjoys.  But that sort of damage is not the

sort contemplated by a claim for deceit.  As a result, MAA is unlikely to prevail on the merits of

13

its claims for common-law deceit, and its Motion for Preliminary Injunction is denied as to this claim.[10]

> 3. *Defamation*

Establishing a <u>prima facie</u> case of defamation under Tennessee law requires MAA to show that Mr. Philipson "published a statement; with knowledge that the statement is false and defaming to the other; or with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." <u>Seaton v. TripAdvisor LLC</u>, 728 F.3d 592, 596–97 (6th Cir. 2013) (quoting <u>Sullivan v. Baptist Mem'l Hosp.</u>, 995 S.W.2d 569, 571 (Tenn. 1999)).

MAA asserts that multiple emails Mr. Philipson sent in early January 2024 included a series of misrepresentations and innuendo regarding MAA, its employees, and current and former employees of Bass, Berry & Sims, MAA's counsel in the case, satisfying each of the <u>prima facie</u> elements of defamation. (ECF No. 82 at PageID 921–22.) To the extent that those statements might be true, they are otherwise actionable because they imply facts that are not true, according to MAA. (<u>Id.</u> at PageID 922–23.)

Among other things, Mr. Philipson's emails falsely imply that MAA principals engaged in insider trading, committed securities fraud, antitrust violations, business fraud and safety violations, that its lease policies were linked to the death of one of its tenants, that he had a team prepared to offer additional information related to those and other allegations, that it lacked insurance coverage, that its mold and water remediation policies were insufficient, that it had insufficient safety measures and that its corporate structure was unlawful. (<u>See</u> ECF Nos. 83-1

---

[10] The Court has not identified any activities that MAA seeks to enjoin Mr. Philipson from engaging in that are tied exclusively to its claim for common-law deceit.

& 83-2.)  MAA declares that all of these statements are false and, given the Court's determination that MAA's factual assertions in its Motion for Preliminary Injunction have been deemed admitted, it is beyond cavil that the statements contained therein are defamatory.  For the purposes of ruling on the Motion for Preliminary Injunction, the Court finds that Mr. Philipson published the false statements contained within the emails, that he had knowledge of their falsity and defamatory nature to MAA, or, at the very least, recklessly disregarded the truth of the statement or negligently failed to ascertain the truth of the statements contained in the emails.

MAA is likely to succeed on the merits of its defamation claim.[11]

### B.  Irreparable Harms Shown

When determining whether to issue a preliminary injunction, the irreparable harm "factor is indispensable," as, "[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit."  D.T. v. Sumner Cnty. Sch., 942 F.3d 324, 327 (6th Cir. 2019) (citation omitted).  A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. Overstreet v. Lexington-Fayette Urb. Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002) (citing Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992)).  At the same time, "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate."  Basicomputer Corp., 973 F.2d at 511.

---

[11] As MAA points out, narrow injunctions against false and defamatory speech are permissible without contravening the First Amendment's general prohibition on prior restraints. See, e.g., In re Conservatorship of Turner, No. M2013-01665-COA-R3CV, 2014 WL 1901115, at *20 (Tenn. Ct. App. May 9, 2014) (adopting the "modern rule" and holding "that defamatory speech may be enjoined after a determination that the speech is, in fact, false," explaining that, "because defamatory speech is not protected by the First Amendment, such an injunction does not violate the amendment's guarantee of free speech").

15

Some, but not all, of the harms MAA seeks redress for are compensable by monetary damages. However, the reputational harm and the interference with customer relationships that MAA has suffered and will potentially continue to suffer in the absence of a preliminary injunction are difficult to quantify, and thus warrant the relief MAA seeks. See ACT, Inc. v. Worldwide Interactive Network, Inc., 46 F.4th 489, 503–04 (6th Cir. 2022) ("[I]nterference with customer relationships and damage to reputation are precisely the sorts of injuries this circuit has said are difficult to quantify monetarily, and thus constitute irreparable harm.") (citations omitted). The fear and intimidation Mr. Philipson has wreaked through his online antics also represent the sort of difficult to quantify damages that constitute irreparable harm, warranting a preliminary injunction. This factor weighs in favor of granting MAA's Motion for Preliminary Injunction.

### C.  No Substantial Harm to Third Parties

Evaluating the third factor "requires a court to balance the harm a plaintiff would suffer if its request for a preliminary injunction was denied with the harm the defendants would suffer if they were to be preliminarily enjoined. It also requires a court to assess the impact a preliminary injunction might have on relevant third parties." Corp. Exp. Off. Prod. v. Warren, No. 01-2521 DBRE, 2002 WL 1901902, at *27 (W.D. Tenn. May 24, 2002).

Any harm Mr. Philipson may sustain as a result of the issuance of a preliminary injunction that prevents him from engaging in the sort of activities he has been engaged in would be outweighed by the ongoing harms MAA would suffer if the injunction were denied. Moreover, the preliminary injunction will not result in harm to third parties. In fact, prohibiting Mr. Philipson from disseminating defamatory information about MAA would likely help third parties and the public, and not harm them. See e.g., Davenport v. Wash. Educ. Ass'n, 551 U.S.

177, 188 (2007) (finding that "speech that is . . . defamatory can be constitutionally proscribed because the social interest in order and morality outweighs the negligible contribution of those categories of speech to the marketplace of ideas"). This factor also weighs in favor of issuing a preliminary injunction.

### D.  Injunctive Relief Serves the Public Interest

Finally, issuing the injunction MAA seeks will also serve the public interest. As MAA points out, "[t]he public interest is always served by enhancing public safety." (ECF No. 82 at PageID 925.) The public, which includes MAA, its employees, its counsel, and others, have a right to be protected from Mr. Philipson's stalking and defamation. The final factor weighs in favor of granting MAA's Motion for Preliminary Injunction.

Because all four factors weigh in favor of granting MAA's Motion for Preliminary Injunction, the motion is **GRANTED** as to its claims for negligence per se and defamation, but **DENIED** as to its claim for deceit.

### E.  Security

Under the Federal Rules, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, "[w]hile this language appears to be mandatory, 'the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.'" Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co., 714 F.3d 424, 431 (6th Cir. 2013) (quoting Moltan Co. v. Eagle–Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1995)). Here, given MAA's strong likelihood of success on the merits, as well as the fact that Mr.

Philipson will incur little, if any, harm upon the entry of the preliminary injunction, MAA shall not be required to post a bond.

**IT IS THEREFORE ORDERED THAT:**

1. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from creating or setting up any social media account or any other type of account in the name, or a confusingly similar name, of any Mid-America Apartment Communities, Inc., Mid-America Apartments, L.P., any of their respective affiliates, and its and their respective present or past shareholders, directors, officers, managers, partners, employees (other than Defendant), agents and professional advisors (including but not limited to attorneys, accountants and consultants (collectively, "MAA Persons"), without such individual's or entity's express written permission.

2. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from attempting to access or take control of any social media account or any other type of account or device, or to change the login credentials of any account or device, in the name of any MAA Person without such individual's or entity's express written permission.

3. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from applying for jobs in the name of any individual MAA Person without the individual's express written permission.

4. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from applying for credit cards or any other type of

financial instrument or loan in the name of any MAA Person without the individual's or entity's express written permission.

5.  Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from purchasing domain names that contain the MAA trademarks and/or from setting up and/or publishing a website that uses MAA's trademarks in an infringing manner or in a manner that is likely to cause confusion among MAA customers and the apartment rental marketplace.

6.  Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from setting up social media accounts, whether on LinkedIn or otherwise, that falsely purport to be a MAA-sanctioned account or that use the MAA trademarks in a manner that is infringing or likely to cause confusion among MAA customers and the apartment rental marketplace.

7.  Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from accessing or attempting to access MAA's computer systems or servers.

8.  Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from contacting any individual MAA Person in-person or by phone, electronic mail, text message, social media, direct message, or any other method, without the express written consent of such person.

9.  Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from committing any threats, stalking, cyberstalking or intimidating behavior as described in 18 U.S.C. § 2261A.

10. Defendant shall not come within 500 feet of any MAA office, to include parking structures.

11. Other than as noted in Paragraph 12 below, Defendant Philipson, whether under his own name or a false name, and those in active concert with him, are hereby enjoined and prohibited from using, posting, publicizing, disseminating, or distributing statements, including but not limited to e-mails, the leaving of a review on an internet platform, or assisting another in doing same, that state or imply that:

   a. MAA's General Counsel, Rob DelPriore has participated in illegal or improper stock transactions;

   b. That it was unethical or improper for Rob DelPriore to have previously been employed at Bass, Berry & Sims;

   c. there is something improper, illegal, or untoward about the corporate structure of MAA;

   d. that MAA lacks proper insurance coverage;

   e. that MAA and its corporate activities have compromised "tenant safety;"

   f. that MAA has inadequate mold and water remediation such that they threaten tenant health and "property integrity";

   g. that MAA spends lavishly at the expense of the tenants;

   h. that MAA has dangerous policies with regard to residents' pets;

   i. that MAA has inadequate grill safety measures;

   j. that MAA or its counsel has committed wrongful or improper conduct by attempting to serve a subpoena in his lawsuit.

12. Nothing in this Order shall in any way limit Defendant's right to make whistleblowing complaints or to otherwise communicate with a government agency, as provided for, protected under, or warranted by applicable law.

13. This Preliminary Injunction shall remain in effect until a final order is entered in this case unless dissolved sooner by order of this Court.

## III.   Contempt of Court

Finally, the Court warned Mr. Philipson that his failure to respond to the Court's orders would result in a finding that he was in contempt.  (See ECF No. 90 at PageID 1473.)  Mr. Philipson has failed to respond to multiple orders to show cause and failed to attend multiple hearings set before this Court, as well as the Court-ordered judicial mediation.  Given this ongoing obstreperous behavior, the Court is left no choice and hereby **FINDS MR. PHILIPSON IN CONTEMPT**.

A hearing addressing Mr. Philipson's purging of his contempt will be held at 10:00 a.m. on Monday, April 15, 2024, in Courtroom 1.   **If Mr. Philipson fails to appear as directed, the Court shall take all necessary action to bring him before the Court, including but not limited to issuing a warrant for his arrest and directing that he be held in custody pending a hearing on this matter.**

## CONCLUSION

For the reasons stated above, the Court **DENIES AS MOOT** MAA's Motion for Contempt and Sanctions; **GRANTS IN PART AND DENIES IN PART** MAA's Motion for Preliminary Injunction; **DENIES** Mr. Philipson's request to continue the mediation; **FINDS** Mr. Philipson in Contempt; and **SETS A HEARING** regarding Mr. Philipson's Contempt for 10:00

a.m. on Monday, April 15, 2024, in Courtroom 1.

**IT IS SO ORDERED,** this 19th day of March, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE