IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:23-cv-02186-SHL-cgc |
| DENNIS MICHAEL PHILIPSON, | ) ) ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR SANCTIONS OF JUDGMENT AND GRANTING IN PART MOTION FOR PERMANENT INJUNCTION**

Before the Court is Plaintiff Mid-America Apartment Communities, Inc.'s ("MAA") Motion for Sanctions of Judgment and Permanent Injunction Against Philipson (the "Motion for Judgment"), filed March 6, 2024. (ECF No. 92.) Pro se Defendant Dennis Michael Philipson did not respond to the motion and his time to do so has passed.

Mr. Philipson has made a habit of failing to respond to Plaintiff's motions and numerous Court orders in this case, and has failed to attend multiple hearings, both in-person and virtual. Most recently, Mr. Philipson failed to attend the April 15, 2024 hearing the Court set to give him the opportunity to purge its finding that he was in contempt. (ECF No. 96.) In the Order finding him in contempt, the Court warned him that if he "fails to appear as directed, the Court shall take all necessary action to bring him before the Court, including but not limited to issuing a warrant for his arrest and directing that he be held in custody pending a hearing on this matter." (ECF No. 94 at PageID 1557.) At the contempt hearing, the Court explained that it would not, at this point, issue an arrest warrant for Mr. Philipson, but would proceed with ruling on MAA's Motion for Judgment, and it does so now.

As described in more detail below, MAA's motion for judgment is **GRANTED** and its motion for permanent injunction is **GRANTED IN PART**. Judgment is granted in MAA's favor and a permanent injunction is issued consistent with terms described in this Order. MAA is further ordered to provide, within two weeks of the entry of this Order, declarations as to the amount of damages it believes it is entitled to pursuant to this Order. After those damages calculations are provided, the Court will determine whether to set a damages hearing.

## BACKGROUND

A fulsome recitation of the facts in this case can be found in the Court's previous orders. (See ECF No. 69 at PageID 742–44; ECF No. 94 at PageID 1539–42.) That background will not be fully recapitulated in this Order, which instead focuses on the elements of the case relevant to the motion before the Court.

In the Court's Order that found Mr. Philipson in contempt, it also granted in part and denied in part MAA's motion for preliminary injunction. Before issuing that Order, the Court entered an Order to Show Cause that required Mr. Philipson to respond to the underlying motion. Mr. Philipson's failure to respond to the motion for preliminary injunction and the corresponding Order to Show Cause rendered MAA's factual assertions uncontested, as the Court previously explained. (See ECF No. 91 at PageID 1476; ECF No. 94 at PageID 1546.) Mr. Philipson's failure to respond to the Motion for Judgment has similarly rendered the facts asserted as to the permanent injunction undisputed.

In addition to the permanent injunction, MAA also seeks the following judgment against Mr. Philipson:

- that Philipson is liable under each claim for the relief set forth in the First Amended Complaint (Dkt. 16);
- that Philipson is liable to MAA for all damages it has suffered by reason of his unlawful acts;

- that Philipson is required to pay enhanced and/or punitive damages to MAA, as determined by this Court, for his deliberate and willful trademark infringement and unfair competition;
- that Philipson is required to pay MAA treble damages for the injury he has caused under Tennessee's Consumer Protection Act;
- that Philipson is required to pay MAA's reasonable attorneys' fees and disbursements incurred during this litigation;
- that Philipson is required to pay MAA all damages to which it is entitled for his defamation, negligence per se, deceit, intentional interference with prospective business advantage, and violations of the Tennessee Personal and Commercial Computer Act of 2003;
- that Philipson is required to pay MAA the cost of this action;
- that Philipson is required to pay pre- and post-judgment interest on all amounts to which Plaintiff is due.

(ECF No. 92 at PageID 1481–82.)

## MAA'S MOTION FOR PERMANENT INJUNCTION

The Court's analysis of MAA's motion for permanent injunction follows a similar course as its analysis of MAA's motion for preliminary injunction, as the same standards are generally applicable to both. See Gas Nat. Inc. v. Osborne, 624 F. App'x 944, 948 (6th Cir. 2015) (citing Am. Civil Liberties Union of Ky. v. McCreary Cnty., 607 F.3d 439, 445 (6th Cir. 2010) ("The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits rather than a likelihood of success."))[1] A permanent injunction requires a plaintiff to demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

---

[1] This is not to say that a court should rubber stamp the findings from the preliminary injunction stage when it is considering a request for permanent relief, as a party is not required to prove its case in full at the preliminary-injunction stage and the findings of fact and conclusions of law a court makes in granting a preliminary injunction are not binding at trial on the merits. Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Ultimately, "a preliminary injunction has no preclusive effect—no formal effect at all—on the judge's decision whether to issue a permanent injunction." Radiant Glob. Logistics, Inc. v. Furstenau, 951 F.3d 393, 397 (6th Cir. 2020) (quoting Gjertsen v. Bd. of Election Comm'rs, 751 F.2d 199, 202 (7th Cir. 1984)).

3

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (citations omitted). "The four-factor eBay test is a balancing test under which the plaintiff must demonstrate that the totality of circumstances weighs in its favor." Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F. Supp. 2d 978, 982 (W.D. Tenn. 2006), amended in part, No. 02-2873 MA/A, 2006 WL 8435285 (W.D. Tenn. Oct. 27, 2006) (citing Canadian Lumber Trade All. v. United States, 441 F.Supp.2d 1259, 1261–62 (CIT 2006), aff'd, 517 F.3d 1319 (Fed. Cir. 2008)). Granting or denying "permanent injunctive relief is an act of equitable discretion by the district court." Id. "Under Federal Rule of Civil Procedure 65(d), an order granting an injunction must (1) state the reasons why it issued, (2) state its terms specifically, and (3) describe in reasonable detail the acts restrained or required." Gas Nat. Inc. v. Osborne, 624 F. App'x 944, 948 (6th Cir. 2015).

Mr. Philipson has had multiple opportunities to challenge MAA's factual allegations against him in the motions for injunctive relief, both preliminary and permanent, and has not done so. Nor did he challenge the Court's factual or legal findings in its Order granting in part MAA's preliminary injunction.[2] Therefore, the evidence before the Court at this stage remains

---

[2] The Court also notes that Mr. Philipson never filed an answer in this matter and, when he was given the opportunity during his deposition to challenge many of the factual assertions MAA has made in this litigation, he did not do so, instead repeatedly saying that he did not recall whether he engaged in the actions alleged by MAA. (See, e.g., ECF No. 87-1 at PageID 1173 ("So instead of sitting here and going through all this stuff and me saying I don't recall and all that, we can just switch it around because I'm just not going to recall anything anymore."); id. at PageID 1198 ("I don't recall any of this. So we can go through it one by one. I don't recall any of this, unfortunately."); id. at PageID 1200 ("I'm not going to deny anything."); id. at PageID 1231 ("Again, I'm not unequivocally denying anything right now. I don't – I have no recollection of doing it."); id. at PageID 1259–60 ("I don't recall a lot of the stuff. And if I did do it, . . . I don't like the way I'm being – the way this is portrayed. And some of it's pretty terrible. So it's making me think even I got more mental problems than I really do if I did do this.").)

4

unchanged—and unchallenged—as that which was before the Court at the preliminary injunction stage. And, just as was the case as to the preliminary injunction, "when there is no dispute of material fact alleged, then it may be appropriate for a court to decide a case without an evidentiary hearing." United States v. Owens, 54 F.3d 271, 277 (6th Cir. 1995) (citing United States v. McGee, 714 F.2d 607, 613 (6th Cir. 1983)).

Given the state of the record, MAA has demonstrated each of the elements required for the imposition of a permanent injunction, thus warranting converting the preliminary injunction as it applies to its claims for negligence per se and defamation.[3] The analysis the Court articulated in its Order establishing the preliminary injunction applies with equal force here and is described briefly below in the context of eBay's four-factor test.

First, MAA has shown that it has suffered irreparable injury as a result of Mr. Philipson's actions both in the virtual and tangible realms. Mr. Philipson's stalking has caused emotional harm to MAA's employees (see, e.g., Decl. of Jay Blackman (ECF No. 84)), and has caused MAA to incur significant costs, including having to purchase credit monitoring services for its employees and outside counsel, employing cyberstalking experts to trace Mr. Philipson's

---

[3] MAA filed its Motion for Judgment prior to the Court's Order that put in place the preliminary injunction. The Order explained that, although MAA demonstrated a likelihood of success as to its negligence per se and defamation claims, it did not provide evidence that it relied upon Mr. Philipson's false representations to its detriment, a necessary element of its common-law fraud and deceit claim. (ECF No. 94 at PageID 1548–50.) The Court thus denied the motion for preliminary injunction as to that claim, but noted that it "has not identified any activities that MAA seeks to enjoin Mr. Philipson from engaging in that are tied exclusively to its claim for common-law deceit." (Id. at PageID 1550 n.10.)

At the contempt hearing, MAA's counsel indicated that MAA did not have any additional proof to support its claim for deceit. The permanent injunction is thus **DENIED** as to that claim. However, as was the case with the preliminary injunction, that denial has little practical effect, as none of the activities enjoined through this Order are connected solely to MAA's deceit claim.

activities, and incurring significant attorneys' fees to address Mr. Philipson's trademark infringement (ECF No. 82 at PageID 919).

At the same time, Mr. Philipson's defamatory statements found in the multiple emails he sent in early January 2024 included a series of misrepresentations and innuendo regarding MAA, its employees, and current and former employees of Bass, Berry & Sims, MAA's counsel in the case. Those statements resulted in the sort of irreparable reputational harm to MAA and its employees and that harm is likely to continue absent implementation of the permanent injunctive relief described below.

Second, MAA has demonstrated that the remedies available at law are inadequate to compensate for the injuries it has suffered at the hands of Mr. Philipson, including that which has resulted from his negligence per se and defamatory conduct.[4] Monetary damages alone are insufficient to compensate MAA for the harms that have resulted from those actions, and enjoining Mr. Philipson from engaging in the activities that give rise to MAA's claims is necessary.

Third, considering the balance of hardships between the MAA and Mr. Philipson, a remedy in equity in the form of this permanent injunction is warranted. Any harm Mr. Philipson may encounter due to the issuance of the permanent injunction (which is minimal, at most), is outweighed by the ongoing harms MAA would suffer if the injunction were denied. Moreover,

---

[4] In the hearing on the contempt finding, counsel for MAA indicated that it was unaware of any additional tortious actions that Mr. Philipson had engaged in after the Court entered the preliminary injunction. Given that some of Mr. Philipson's tortious activities took place between MAA's filing of the lawsuit and the preliminary injunction Order, a permanent imposition of the provisions of the preliminary injunction seems to be necessary—and is likely to ensure that Mr. Philipson does not revert to his previous activities.

the terms of the permanent injunction specifically carve out limitations that ensure that Mr. Philipson's First Amendment rights are protected.

Lastly, the public interest would not be disserved by a permanent injunction. As explained in the preliminary injunction Order, the public, which includes MAA, its employees, its counsel, and others, have a right to be protected from Mr. Philipson's stalking and defamation.

Given the foregoing, the preliminary injunction previously granted to Plaintiff is hereby **CONVERTED** to a permanent injunction.

**IT IS THEREFORE ORDERED THAT:**

1. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from creating or setting up any social media account or any other type of account in the name, or a confusingly similar name, of any Mid-America Apartment Communities, Inc., Mid-America Apartments, L.P., any of their respective affiliates, and its and their respective present or past shareholders, directors, officers, managers, partners, employees (other than Defendant), agents and professional advisors (including but not limited to attorneys, accountants and consultants (collectively, "MAA Persons"), without such individual's or entity's express written permission.

2. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from attempting to access or take control of any social media account or any other type of account or device, or to change the login credentials of any account or device, in the name of any MAA Person without such individual's or entity's express written permission.

3. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from applying for jobs in the name of any individual MAA Person without the individual's express written permission.

4. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from applying for credit cards or any other type of financial instrument or loan in the name of any MAA Person without the individual's or entity's express written permission.

5. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from purchasing domain names that contain the MAA trademarks and/or from setting up and/or publishing a website that uses MAA's trademarks in an infringing manner or in a manner that is likely to cause confusion among MAA customers and the apartment rental marketplace.

6. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from setting up social media accounts, whether on LinkedIn or otherwise, that falsely purport to be a MAA-sanctioned account or that use the MAA trademarks in a manner that is infringing or likely to cause confusion among MAA customers and the apartment rental marketplace.

7. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from accessing or attempting to access MAA's computer systems or servers.

8. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from contacting any individual MAA Person in-

person or by phone, electronic mail, text message, social media, direct message, or any other method, without the express written consent of such person.

9. Defendant, whether under his own name or a false name, and those in active concert with him, are enjoined and barred from committing any threats, stalking, cyberstalking or intimidating behavior as described in 18 U.S.C. § 2261A.

10. Defendant shall not come within 500 feet of any MAA office, to include parking structures.

11. Other than as noted in Paragraph 12 below, Defendant Philipson, whether under his own name or a false name, and those in active concert with him, are hereby enjoined and prohibited from using, posting, publicizing, disseminating, or distributing statements, including but not limited to e-mails, the leaving of a review on an internet platform, or assisting another in doing same, that state or imply that:

   a. MAA's General Counsel, Rob DelPriore has participated in illegal or improper stock transactions;

   b. that it was unethical or improper for Rob DelPriore to have previously been employed at Bass, Berry & Sims;

   c. there is something improper, illegal, or untoward about the corporate structure of MAA;

   d. that MAA lacks proper insurance coverage;

   e. that MAA and its corporate activities have compromised "tenant safety;"

   f. that MAA has inadequate mold and water remediation such that they threaten tenant health and "property integrity";

   g. that MAA spends lavishly at the expense of the tenants;

    h. that MAA has dangerous policies with regard to residents' pets;

    i. that MAA has inadequate grill safety measures;

    j. that MAA or its counsel has committed wrongful or improper conduct by attempting to serve a subpoena in his lawsuit.

12. Nothing in this Order shall in any way limit Defendant's right to make whistleblowing complaints or to otherwise communicate with a government agency, as provided for, protected under, or warranted by applicable law.

13. Any confidential material belonging to MAA in Defendant's possession, custody, or control (or in the possession, custody, or control of those in active concert with him) shall be immediately returned to MAA without any copies being retained.

## MAA'S MOTION FOR JUDGMENT

At the contempt hearing, MAA indicated that it was seeking the sanction of judgment under Federal Rules of Civil Procedure 16 and 37, as well as the Court's inherent authority.

Under Rule 16(f), courts "may issue any just orders," including rendering a default judgment against a disobedient party, if the party "(A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order." Rule 37, whose sanctions are incorporated into Rule 16(f), also provides that a court may issue just orders for failure "to obey an order to provide or permit discovery," including rendering a default judgment against a disobedient party.[5] Finally, federal courts have the inherent power to manage

---

[5] "Unlike under [Federal Rule of Civil Procedure] 55, which requires entry of default as a predicate to default judgment, Rules 16(f) and 37(b)(2)(A)(vi) authorize the Court to render default judgment against the disobedient party." Stewart v. Complete Home Care Servs. of TN, Inc., No. 1:19-CV-00082, 2021 WL 3037499, at *4 (M.D. Tenn. July 19, 2021), report and recommendation adopted, No. 1:19-CV-00082, 2021 WL 3634780 (M.D. Tenn. Aug. 17, 2021).

10

their own dockets and are imbued with powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962)).

Granting judgment in MAA's favor is warranted on each of these grounds.

**A.      Judgment Under Rules 16 and 37**

Courts in the Sixth Circuit consider four factors when determining whether dismissal is an appropriate sanction for failure to comply with a discovery obligation or other court order:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

Mager v. Wisconsin Cent. Ltd., 924 F.3d 831, 837 (6th Cir. 2019) (quoting United States v. Reyes, 307 F.3d 451, 458 (6th Cir. 2002)). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct . . . [which] refers to behavior that is perverse in resisting authority and stubbornly disobedient." Id. (citations omitted); see also Ndabishuriye v. Albert Schweitzer Soc'y, USA, Inc., 136 F. App'x 795, 800 (6th Cir. 2005) ("In general,  the first factor—bad faith—is the most important.")  Granting such relief is up to the Court's discretion and, "[s]imply put, 'if a party has the ability to comply with a discovery order and does not, dismissal,' and we add or entry of default, 'is not an abuse of discretion.'" Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990) (quoting Regional Refuse Sys. v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir. 1988)).

11

### 1. Mr. Philipson's Conduct is Willful, in Bad Faith and Contumacious

Mr. Philipson's failure to abide by this Court's orders and failure to engage in the discovery process are willful and in bad faith, and he has repeatedly demonstrated contumacious conduct. He has failed to appear at multiple pretrial conferences and has failed to obey multiple orders this Court has issued. For example, after the Court referred the matter to Chief Magistrate Judge Tu M. Pham for mediation in November 2023 (ECF No. 71), Judge Pham held a status conference that Mr. Philipson failed to attend, and then held the mediation that Mr. Philipson also did not attend (ECF Nos. 72 & 74). The Court set a status conference related to MAA's motion for preliminary injunction for February 8, 2024, to be conducted via Microsoft Teams. (ECF No. 88.) Mr. Philipson also failed to attend that hearing. (ECF No. 89.)[6] The Court has issued multiple show cause orders to which Mr. Philipson has failed to respond. (See ECF Nos. 90 & 91.) After the Court found Mr. Philipson in contempt (ECF No. 94), it set a hearing to give him the opportunity to purge the contempt (ECF No. 95), and he failed to appear at the hearing (ECF No. 96).

Mr. Philipson has similarly refused to engage in discovery and has made inconsistent representations to MAA regarding the existence of documents that he may have that are responsive to the discovery requests it propounded upon him.[7] For example, on April 7, 2023,

---

[6] As it does with all virtual hearings, the Court filed a setting letter on the docket and followed up with an email to the Parties prior to the conference instructing them how to join the hearing. The Court sent that email with the instructions at 2:16 p.m. EST on February 7, 2024, to Court staff, all counsel of record, and to three email addresses that Philipson has been known to use. Seventy-eight days later, Mr. Philipson responded to all of the email recipients to say "Sorry – I cannot make this! See you in June for the trial. Thank you for your email." It was Mr. Philipson's first communication with the Court since December 3, 2023, and, needless to say, untimely. (See ECF No. 77.)

[7] On April 11, 2023, before Mr. Philipson was a party to the case, MAA served him with a subpoena to produce six categories of documents. (See ECF Nos. 19 & 19-1.) After Mr. Philipson was added as a party, MAA propounded multiple sets of discovery requests upon him,

Mr. Philipson emailed Bass, Berry & Sims that "[w]e are about to publicly release a complaint we filed with the SEC, DOJ, and IRS regarding the accuracy of their financials in 2021." (ECF No. 19-2 at PageID 293.)  Similarly, on September 8, 2023, Mr. Philipson informed MAA's counsel that he "possess[ed] the tracking details for the disk sent to the SEC, IRS, & DOJ." (ECF No. 62-2 at PageID 605.)  Despite these statements, according to MAA, Mr. Philipson never produced any such documents.

On September 8, Mr. Philipson also appeared to hint that he might have additional materials responsive to the subpoena, but he placed the onus on MAA to identify materials it had so that he could then verify whether he also had materials in his possession.  He wrote to MAA's counsel the following:

> Might I propose that you share some of the specific documents in question? This would allow me to cross-reference and ensure that there hasn't been any oversight or misunderstanding. . . .
>
> Following November 2021, my recollections consist of interactions with many individuals and entities, including employees, ex-employees, and contractors, among others, plus emergency notifications associated with MAA's services.  As for direct correspondence from MAA, nothing specific stands out.  There was an email from Robert Delpriore earlier this year, which, to be honest, felt a bit out in left field.  If you've found something specific in this regard, I'd appreciate it if you could point it out, and I'll certainly take a look.

(ECF No. 62-7 at PageID 630–31.)  The next day, Mr. Philipson told MAA's counsel that he would be happy to review things another time to make sure he did not overlook anything, but wrote that "[i]f there's a particular detail or item you have in mind, kindly bring it to my attention—it will expedite the process." (Id. at PageID 630.)

---

which included overlapping requests for the information sought in the subpoena.  According to MAA, Mr. Philipson has been non-responsive to the subpoena and the discovery requests, both before and after he was named a party to the case.

On September 11, 2023, Mr. Philipson again represented that he found at least one responsive document, "a LinkedIn screenshot from Mr. Delpriore linking him with Bass, Berry, and Sims." (ECF No. 62-4 at PageID 612.) He also wrote that "there hasn't been much beyond that," which implies there was at least something else beyond that. (Id.) Yet, he did not produce that screenshot or, it appears, anything else he referenced having located. Mr. Philipson has also implied in his communications with counsel and in his filings with the Court that he has written Google reviews of MAA (ECF No. 62-5 at PageID 621), and filed a formal complaint "against the legal counsel for the Plaintiff with the Board of Professional Responsibility of the Supreme Court of Tennessee" (ECF No. 33 at PageID 344). MAA represents that Mr. Philipson has not produced anything related to either of these categories of documents, despite his obligation to do so. (ECF No. 62 at PageID 595.)

In short, Mr. Philipson has treated discovery as a game of cat-and-mouse. But contrary to Mr. Philipson's approach, discovery involves the production of all relevant, non-privileged materials, and is not a process of determining what documents the requesting party already has before tailoring your production to match those documents.

As the foregoing examples illustrate, Mr. Philipson's refusal to engage in discovery, to honor his discovery obligations, and his repeated flouting of this Court's orders, is willful, in bad faith, and the sort of contumacious conduct warranting default judgment as a sanction under both Rule 16 and 37.

**2. MAA Has Been Prejudiced by Mr. Philipson's Conduct**

MAA has clearly been prejudiced by Mr. Philipson's conduct. It has attended numerous hearings that Mr. Philipson has failed to attend. It has filed multiple motions in an attempt to get Mr. Philipson to provide discovery. It has repeatedly sent him emails in an effort to advance this

litigation, and frequently been ignored. This factor also weighs in favor of granting default judgment in MAA's favor.

### 3. Mr. Philipson was Warned That Default May be Entered Against Him

The Court previously warned Mr. Philipson that a failure to respond to its show cause orders may result in default being entered against him. (ECF No. 21.) The Court's more recent warnings to Mr. Philipson focused on the steps it will take related to his ongoing contempt. (See ECF No. 90 at PageID 1473–74; ECF No. 94 at PageID 1557.) The fact that the Court has not recently warned him that a default judgment might be entered against him does not forestall the entry of a default judgment in light of his ongoing contumacious conduct. See Mager, 924 F.3d at 840 (explaining that "a district court should impose a penalty short of dismissal unless the derelict party has engaged in bad faith or contumacious conduct" and that a "lack of a prior warning would not prevent dismissal of the complaint as a first sanction").

Mr. Philipson has previously been warned that a failure to abide by the Court's orders may result in default being entered against him and his repeated disregard of the Court's orders, and waste of judicial and counsel's resources, weigh in favor of granting a default judgment against him.

### 4. Less Drastic Sanctions Were Imposed and Considered

Finally, the Court has both considered and imposed less drastic sanctions against Mr. Philipson based upon his conduct in this matter. The Court held Mr. Philipson in contempt after issuing multiple orders to show cause that went unanswered. (ECF No. 94.) The Court set a hearing to provide Mr. Philipson an opportunity to purge that contempt, but he failed to attend. (ECF No. 96.) The Court warned Mr. Philipson that a failure to attend the hearing may result in it issuing a warrant for his arrest and directing that he be held in custody pending a hearing.

(ECF No. 94.)  At the contempt hearing, the Court explained to MAA's counsel that, rather than issue an arrest warrant for Mr. Philipson, it would instead rule on the permanent injunction motion.  In other words, the Court has done all it can to try to get him to cooperate in this litigation, short of ordering the United States Marshals Service to bring him before the Court.  This factor also weighs in favor of entering default judgment against Mr. Philipson.

Consistent with the foregoing, each of the factors that must be considered when determining whether dismissal is an appropriate sanction for failure to comply with a discovery obligation or other court order weigh in favor of granting default judgment in MAA's favor.

B.      **Judgment Pursuant to the Court's Inherent Authority**

In addition to being warranted under Rules 16 and 37, default judgment is also warranted under the Court's inherent authority.  The Court does not arrive at this conclusion lightly, recognizing that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion."  Chambers, 501 U.S. at 44 (citing Roadway Express v. Piper, 447 U.S. 752, 764 (1980)).

However, Mr. Philipson's actions have continually thwarted the orderly and expeditious disposition of this case.  He did not engage in mediation, despite the Court's appointment of one of its magistrate judges to conduct the mediation.  His refusal to engage in discovery has made it impossible for MAA to abide by the deadlines set in the Scheduling Order.  (See ECF No. 47.)  He has ignored the Court's orders, failed to attend multiple hearings and to respond to multiple show cause orders.  In short, if Mr. Philipson's conduct is not the sort that warrants the invocation of the Court's inherent powers to manage its docket, then it is difficult to imagine what conduct would so qualify.

Therefore, under Rules 16 and 37 and this Court's inherent authority, the Court **GRANTS** MAA's Motion for Judgment. The terms of the judgment are as follows:

- Mr. Philipson is liable under each claim for the relief set forth in the First Amended Complaint (ECF No. 16);
- Mr. Philipson is liable to MAA for all damages it has suffered by reason of his unlawful acts;
- Mr. Philipson is required to pay enhanced and/or punitive damages to MAA, as determined by this Court, for his deliberate and willful trademark infringement and unfair competition;
- Mr. Philipson is required to pay MAA treble damages for the injury he has caused under Tennessee's Consumer Protection Act;
- Mr. Philipson is required to pay MAA's reasonable attorneys' fees and disbursements incurred during this litigation;
- Mr. Philipson is required to pay MAA all damages to which it is entitled for his defamation, negligence per se, deceit, intentional interference with prospective business advantage, and violations of the Tennessee Personal and Commercial Computer Act of 2003;
- Mr. Philipson is required to pay MAA the cost of this action;
- Mr. Philipson is required to pay pre- and post-judgment interest on all amounts to which Plaintiff is due.

Within fourteen days of the entry of this Order, MAA shall submit a detailed description of the damages it has incurred, consistent with the findings within this Order. To the extent a damages hearing will be necessary, the Court will set it by separate order.

## CONCLUSION

MAA's Motion for Sanctions of Judgment and Permanent Injunction Against Philipson is hereby **GRANTED IN PART**. Mr. Philipson is permanently enjoined from engaging in the activities as outlined above. (See supra pp. 7–10.) Default judgment is also entered in MAA's favor, consistent with the terms outlined above.

The Clerk is **DIRECTED** to mail this Order to:

> Dennis Michael Philipson
> 6178 Castleton Way
> Alexandria, VA 22310

The Clerk shall also email this Order to dphilipson1982@yahoo.com and mphilly@gmail.com.

**IT IS SO ORDERED,** this 6th day of May, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
