IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:23-cv-02186-SHL-cgc |
| DENNIS MICHAEL PHILIPSON, | ) ) ) |
| Defendant. | ) ) |

**ORDER ADDRESSING EMAIL TO THE COURT**

On June 13, pro se Defendant Dennis Michael Philipson sent an email to the Court's ECF mailbox. (See Attachment 1 ("Philipson Email").) The Philipson Email purports to "inquire about the progress of the current proceedings, as referenced in the attached order," and includes, among other things, an attachment of the Court's June 13, 2024 Order Requiring Supplementation, in which the Court ordered Plaintiff Mid-America Apartment Communities, Inc. ("MAA") to supplement its notice of damages with certain information. (See ECF No. 102.) In the Philipson Email, he indicates that he "would like to get this over with, pay the bill, and move on." (See Philipson Email.)

As to the "progress of the current proceedings," MAA's deadline to submit its supplementation is June 27, 2024. Upon the date of that filing, Mr. Philipson will have fourteen days in which to file a response to the supplementation, consistent with the Local Rules. (See LR 7.1.) Following the filing of those documents, or the expiration of the deadlines, the Court will rule, via written order, on the damages that MAA is entitled to and will enter a Judgment

closing the case. At that point, the case will be over, Mr. Philipson can pay any bill due MAA, and move on.

There are other issues raised in the Philipson Email, including multiple matters that are not before this Court. The first of those is Mr. Philipson's allegation that he has been harassed by MAA, its counsel, employees, and contractors, which he has reported to "the Ethics Board, the Judicial Board, the Sixth Circuit, the Circuit Executive, and the FBI." (See Philipson Email.) Mr. Philipson has not petitioned the Court for any relief related to these issues, whether in the form of a counter-claim in this matter or in a separate lawsuit. Thus, the Court has no power to resolve any of those disputes. See Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. – —, 2024 WL 2964140, at *5 (2024) (explaining that "[t]he case or controversy requirement limits the role of the Federal Judiciary in our system of separated powers" and "federal courts do not issue advisory opinions about the law").

The second issue Mr. Philipson raises that is not before the Court relates to his assertion that, in April 2021, he made whistleblowing allegations regarding "potential antitrust violations, accounting irregularities, securities compliance issues, and many other legal issues associated with MAA," and that "[t]he gravity of these submissions reflects severe legal concerns that warrant prompt and thorough judicial consideration." (Id.) Just as Mr. Philipson's reports of harassment are not a matter being adjudicated before this Court, the same is true of his whistleblowing claims.

Finally, the last issue Mr. Philipson raises that is not before this Court is his reference to the "FBI raid on antitrust issues with RealPage and Cortland Property Management in Atlanta," which he asserts leads to "the urgency for a transparent resolution" of this matter being "heightened." (Id.) Although he contends that "[t]hese matters affect the parties directly

involved and hold broader implications for regulatory and compliance standards within the industry" (id.), Mr. Philipson does not offer any support as to how any of those matters implicate his trademark infringement and his harassment of MAA and its employees, which form the basis of MAA's complaint against him, and for which the Court has already found him liable. MAA or any other entity's adherence to regulatory and compliance standards in the apartment rental industry are not issues before this Court, which is constrained to resolve the case and controversies before it. See U.S. Const. art III.

The Philipson Email concludes by identifying what he suggests is a potential conflict of interest because one of the undersigned's judicial law clerks formerly worked at the same law firm that represents MAA. Mr. Philipson writes:

> I wish to bring to your attention a potential conflict of interest concerning Mr. Michael Kapellas, who has previously been employed by Bass, Berry & Sims PLC—the counsel representing the opposing side. Under the American Bar Association Model Rules of Professional Conduct, specifically Rule 1.12, former judges, arbitrators, mediators, or other adjudicative officers are required to avoid participation in matters where they had a prior involvement unless all parties give informed consent. Given Mr. Kapellas' association with a party's legal team, an assessment for potential recusal seems prudent to uphold the integrity of the proceedings. I trust you will consider this matter with the utmost seriousness.

(Philipson Email.) Mr. Philipson goes on to ask "whether Tennessee law supports a similar stance on such conflicts of interest, or if a recusal is deemed necessary in this context?" (Id.)

Mr. Philipson's question implicates both the Model Rules as well as the Tennessee Rules of Professional Responsibility, as well as other authorities. First, Rule 1.12(a) of the Model Rules of Professional Conduct provides the following:

> Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer

3

> or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.

Tennessee's Rules of Professional Responsibility include a provision of the same number that copies, almost verbatim, the Model Rule:

> Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk or staff attorney to such a person or as an arbitrator, unless all parties to the proceeding give informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 1.12(a), RPC.[1]

The Court and the licensed lawyers in its employ are governed by the rules of professional conduct. Judicial law clerks are also governed by the Code of Conduct for Judicial Employees (the "Code of Conduct"). However, the Model Rules, Tennessee's Rules of Professional Conduct, and the Code of Conduct are not implicated here.

As a starting point, the Model Rules and Tennessee's Rules both focus on the impropriety of a judicial officer, including a law clerk, moving from a role in the judiciary to a role in which he represents someone whose matter he handled while in the judiciary. There is no such allegation here, as the law clerk in question followed the opposite path, i.e., from private practice to the judiciary. Moreover, as a law clerk, he is an employee of the federal government, and, as such, is prohibited from engaging in the private practice of law. (See Code of Conduct § 320, Canon 4D (explaining that a judicial employee's practice of law is strictly limited to acting pro se, performing routine legal work incident to the management of his or his family's personal

---

[1] Rule 1.12(d), which is the same in both the Model Rules and the Tennessee Rules, provides that "[a]n arbitrator selected as a partisan of a party in a multimember arbitration panel is not prohibited from subsequently representing that party."

4

affairs, performing legal work during the course of his service in the military reserves, and providing pro bono legal service in civil matters, with certain limitations)). The law clerk's involvement in this matter in no way implicates either version of Rule 1.12.

The same is true of the Code of Conduct, which offers guidance governing conflicts of interest. It provides:

> A judicial employee should avoid conflicts of interest in the performance of official duties. A conflict of interest arises when a judicial employee knows that he or she (or the spouse, minor child residing in the judicial employee's household, or other close relative of the judicial employee) might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner.

Code of Conduct § 320, Canon 3F(1).

The law clerk's affiliation with the law firm representing MAA ceased in August 2020 and he has had no affiliation with the firm since then. This matter was filed in April 2023, when he was employed as a law clerk for another judge in this district. He had no knowledge of the case until he began working for the undersigned in August 2023, and is in no way personally or financially affected by the outcome in this matter, no matter what it may be. There is no conflict of interest under this provision of the Code of Conduct.

Canon 3F(2)(a) contains additional restrictions for certain judicial employees, including law clerks. That provision explains that,

> A staff attorney or law clerk should not perform any official duties in any matter with respect to which such staff attorney or law clerk knows that:
>
> (i)  he or she has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

5

    (ii)     he or she served as lawyer in the matter in controversy, or a lawyer with whom he or she previously practiced law had served (during such association) as a lawyer concerning the matter (provided that the prohibition relating to the previous practice of law does not apply if he or she did not work on the matter, did not access confidential information relating to the matter, and did not practice in the same office as the lawyer), or he, she, or such lawyer has been a material witness;

    (iii)    he or she, individually or as a fiduciary, or the spouse or minor child residing in his or her household, has a financial interest in the subject matter in controversy or in a party to the proceeding;

    (iv)    he or she, a spouse, or a person related to either within the third degree of relationship (as defined above in § 310.30), or the spouse of such person (A) is a party to the proceeding, or an officer, director, or trustee of a party; (B) is acting as a lawyer in the proceeding; (C) has an interest that could be substantially affected by the outcome of the proceeding; or (D) is likely to be a material witness in the proceeding;

    (v)     he or she has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy.

There is not a conflict under any of these provisions, either. As explained above, the law clerk's affiliation with the law firm representing MAA ended almost four years ago[2] and more

---

[2] The Court notes that it allows its former law clerks to appear before it after a one-year period of repose, a common length of time under these circumstances, and three times the amount of time that passed between the law clerk's last employment with MAA's law firm. See, e.g., Duke v. Pfizer, Inc., United Div. of Pfizer Hosp. Prod. Grp., 668 F. Supp. 1031, 1036 (E.D. Mich. 1987), aff'd, 867 F.2d 611 (6th Cir. 1989) ("Regarding the intimate relationship between a judge and his law clerk, the prevailing view is that a one- or two-year period of repose is enough to cure any possible appearance of impropriety.") (citations omitted).

than two-and-a-half years before this case was filed. He has no bias concerning any of the parties here and neither he nor any family member stands to benefit from any of the Court's rulings in this matter. Any involvement of his in this case to date or going forward does not present any conflict under any of the provisions in the Code of Conduct.

Finally, to the extent that Mr. Philipson seeks the recusal of the undersigned from this matter, the statute that governs recusals illustrates that such a request is equally without foundation.

Under federal law, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The statute also provides specific circumstances in which disqualification is mandatory, including "[w]here [s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

"Disqualification is not based on the subjective view of a party; rather, the law imposes an objective standard: whether 'a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" United States v. Cail, No. 3:18-CR-158KACDCP13, 2021 WL 665525, at *1 (E.D. Tenn. Feb. 19, 2021) (quoting United States v. Hartsel, 199 F.3d 812, 820 (6th Cir. 1999)). While "a judge is obliged to disqualify himself when there is a close question concerning his impartiality, he has an equally strong duty to sit where disqualification is not required." Id. (quoting United States v. Angelus, 258 F. App'x 840, 842 (6th Cir. 2007)).

To the extent Mr. Philipson has moved for the undersign to recuse herself from this matter, there are not grounds to do so. A reasonable, objective person would not question the

undersigned's impartiality in these circumstances. It is true that, "[e]ven if the judge has no reason to recuse [himself] based upon [his] own circumstances, a law clerk's relationships might cause the impartiality of decisions from that judge's chambers in which the clerk participates reasonably to be questioned." Xyngular Corp. v. Schenkel, 160 F. Supp. 3d 1290, 1300 (D. Utah 2016). However, because the court concludes that the law clerk does not have a conflict of interest, it need not analyze whether a conflict is imputed to the court. See id. at 1301 n.29.

Consistent with the foregoing, there is no conflict of interest involving the undersigned or her law clerk. To the extent Mr. Philipson seeks the recusal of either, that request is **DENIED**.

**IT IS SO ORDERED,** this 21st day of June, 2024.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
CHIEF UNITED STATES DISTRICT JUDGE