# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:23-cv-02186-SHL-cgc |
| DENNIS MICHAEL PHILIPSON, | ) ) ) |
| Defendant. | ) ) |

## ORDER GRANTING MOTION FOR ENTRY OF JUDGMENT
## AND DETERMINING DAMAGES AWARD

Before the Court is pro se Defendant Dennis Michael Philipson's Motion for Entry of Judgment, filed June 24, 2024. (ECF No. 106.) Plaintiff Mid-America Apartment Communities, Inc. ("MAA") filed its response on July 22, 2024. (ECF No. 118.) While Mr. Philipson's Motion was pending, he filed a Notice of Appeal, in which he appealed to the Sixth Circuit Court of Appeals this Court's May 6, 2024 Order Granting Motion for Sanctions of Judgment and Granting in Part Motion for Permanent Injunction. (ECF No. 110.) On September 5, 2024, the Sixth Circuit denied Philipson's appeal, finding that "[t]he May 6, 2024, order is not a final judgment for purposes of appeal," as "[j]udgments 'where assessment of damages or awarding of other relief remains to be resolved have never been considered "final" within the meaning of 28 U.S.C. § 1291.'" (ECF No. 120 at PageID 2216.) The Sixth Circuit further explained that Mr. Philipson could have appealed the portion of the May 6, 2024 Order granting MAA a permanent injunction, but he missed his deadline to do so. (Id. at PageID 2217.)

Mr. Philipson's Motion for Entry of Judgment is thus ripe for determination.[1] But first, the Court must settle the issue that delayed its previous entry of judgment, that is, whether and how much damages MAA is entitled to given the Court's previous rulings in its favor.

## BACKGROUND

The facts of the case are outlined in several of the Court's previous orders. (See ECF Nos. 69, 94 & 97.) The Court's May 6, 2024 Order in which it granted MAA's motion for judgment and found Mr. Philipson liable to MAA is the basis for resolving the issues that remain. In that Order, the Court found the following:

- Mr. Philipson is liable to MAA for all damages it has suffered by reason of his unlawful acts;
- Mr. Philipson is required to pay enhanced and/or punitive damages to MAA, as determined by this Court, for his deliberate and willful trademark infringement and unfair competition;
- Mr. Philipson is required to pay MAA treble damages for the injury he has caused under Tennessee's Consumer Protection Act ("TCPA");
- Mr. Philipson is required to pay MAA's reasonable attorneys' fees and disbursements incurred during this litigation;
- Mr. Philipson is required to pay MAA all damages to which it is entitled for his defamation, negligence per se, deceit, intentional interference with prospective business advantage, and violations of the Tennessee Personal and Commercial Computer Act of 2003;
- Mr. Philipson is required to pay MAA the cost of this action;
- Mr. Philipson is required to pay pre- and post-judgment interest on all amounts to which Plaintiff is due.

(ECF No. 97 at PageID 1576.)

---

[1] To the extent Mr. Philipson seeks additional relief beyond entry of judgment in his 121-page Motion, it is unclear. The Motion outlines ten "key issues" that Mr. Philipson seeks to address: exposing judicial misconduct and bias; demand an immediate judgment; prepare for appeal; protect whistleblower rights; rectify civil rights violations; challenge defamation and restore reputation; correct improper notices and tackle deliberate confusion; ensure fair trial procedures; stop unauthorized subpoenaing and record alteration; and demand repercussions for ethical violations. (ECF No. 106 at PageID 1883–85.) The Court can and will enter judgment, as Mr. Philipson requests, but because he does not otherwise provide adequate basis for any other relief he is requesting or entitled to, his Motion is granted only as to the request for judgment.

In the Order, the Court also directed MAA to submit a detailed description of the damages it incurred, consistent with the Order's findings, and informed the Parties that it would set a damages hearing, if necessary. (Id.) MAA filed a financial affidavit on May 17, 2024, in which it outlined an entitlement to $578,526.73, plus pre- and post-judgment interests. (ECF No. 99.) The costs were broken down as follows:

- $6,633.09 spent with the law firm Holland & Knight for the factual investigation into who was responsible for the harassment of MAA;
- $60,874 spent with Johnathan Bridbord of FIT Consulting Technology, LLC, to assist MAA's counsel in determining who was responsible for disparaging comments online, harassment in various forms of MAA's employees, and an attempted hack into MAA's computer systems;
- $584.55 spent on purchasing Internet domain names to prevent Mr. Philipson from creating additional infringing webpages;
- $953.80 spent on credit monitoring and identity theft protection after Mr. Philipson applied for credit cards in the names of MAA's counsel, applied for jobs in her name, made frivolous complaints to the Board of Professional Responsibility, and signed counsel up for unwanted mailing lists;
- $207,136.32, insofar as the $69,045.44 in damages above are enhanced under the Lanham Act, and trebled pursuant to MAA's claims under the TCPA; and
- $371,390.41 spent on attorneys' fees and costs for Bass, Berry & Sims, MAA's counsel and its counsel's staff.[2]

(Id.)

The Court determined that a damages hearing was unnecessary, but ordered MAA to file exhibits that it omitted from its filing that supported its claim for attorneys' fees. (ECF No. 100.) The same day, MAA filed a notice correcting the deficiencies. (ECF No. 101.) However, on

---

[2] According to MAA, the costs, which included "service fees, court reporters, deposition transcripts, filing and recording fees, airfare, lodging, meals, postage, subpoena fees, mileage, parking and other travel-related and out-of-pocket expenses," were $7,893.95 and the attorneys' fees were $363,496.46. (ECF No. 101-3 at PageID 1601.) In its supplemental filings, MAA indicated that the costs had climbed to $9,122.61 and the attorneys' fees to $374,491, for a total of $383,613.61. (ECF No. 111 at PageID 2048.) MAA explained that the increases were because, "[s]ince the Court has granted permanent injunctive relief, Mr. Philipson has failed to comply with the injunction and insists upon repeatedly emailing MAA employees in violation of the injunction and filing numerous frivolous whistleblower complaints, all of which continue to drive up costs." (Id.)

3

June 13, 2024, the Court entered an Order explaining that MAA's corrected filing failed to comply with the Local Rules that "require parties to submit an affidavit or declaration of counsel detailing the number of hours spent on each aspect of the case and an affidavit or declaration from another attorney in the community, who is not otherwise involved in the case, setting out the prevailing rate in the community for similar services." (ECF No. 102 at PageID 1607 (citing L.R. 54.1(b)(1)–(2)).) The Court gave MAA the opportunity to correct the deficiencies, which it did on July 5, 2024. (ECF Nos. 111 & 112.) Those MAA filings provide the Court with requisite information for it to determine MAA's damages that resulted from Mr. Philipson's actions.[3] Mr. Philipson never responded to any of MAA's submissions detailing its entitlement to damages.[4]

## LEGAL STANDARD

The reasonableness of a fee award is determined by the "lodestar" amount, which is calculated by multiplying the number of hours spent on the litigation by an attorney's hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Parties seeking attorneys' fees have the

---

[3] On July 8, 2024, MAA filed a Motion for Contempt for Violating Permanent Injunction, alleging that Mr. Philipson violated the terms of the Permanent Injunction. (ECF No. 113.) MAA asked that the Court find Mr. Philipson in Contempt and award its attorneys' fees, along with any other sanctions the Court deemed appropriate. (Id.) The Court will issue a separate order addressing that motion.

[4] On June 13, 2024, Mr. Philipson sent a series of emails to the ECF mailboxes of the undersigned and other judges in the district, among other recipients. None of those emails challenged the damages calculations provided by MAA. In fact, in one he indicated that he "would like to get this over with, pay the bill, and move on." (ECF No. 103-1 at PageID 1764.) On June 21, 2024, the Court entered an Order Addressing Email to the Court. (ECF No. 103.) That Order, among other things, informed Mr. Philipson of the "progress of the current proceedings," addressed several matters raised in his email that were not before this Court, and explained why the undersigned's handling of this case did not represent a conflict of interest. (Id.) In his subsequent Motion for Entry for Judgment, Mr. Philipson characterized MAA's damages as "unsubstantiated" and "fictitious," but did not otherwise address them. (See ECF No. 106 at PageID 1882, 1973, 1974.)

4

burden of providing evidence of the hours worked and rates claimed.  Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234, 242 (1985).  In this district, the Local Rules require parties to submit an affidavit or declaration of counsel detailing the number of hours spent on each aspect of the case and an affidavit or declaration from another attorney in the community, who is not otherwise involved in the case, setting out the prevailing rate in the community for similar services.  L.R. 54.1(b)(1)–(2).  Trial courts have broad discretion to determine what constitutes a reasonable hourly rate but should assess the prevailing market rate in the relevant community when evaluating a request for attorneys' fees.  Waldo v. Consumers Energy Co., 726 F.3d 802, 821 (6th Cir. 2013).  Once parties seeking attorneys' fees establish that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be reasonable and recoverable.  Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 552–53 (6th Cir. 2008).

## ANALYSIS

### I. Damages for Non-Attorneys' Fees and Costs

As a starting point, the Court finds that the $69,045.44 in non-attorneys' fees-related damages outlined by MAA to be reasonable and necessary, first in rooting out who was responsible for the infringing content, and then in dealing with the intellectual property infringements and harassment MAA suffered at Mr. Philipson's hands.  As the Court has previously determined, MAA is entitled to a trebling of those damages under the TCPA.[5]

---

[5] Under the TCPA, "if the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper, except that the court may not award exemplary or punitive damages for the same unfair or deceptive practice." Tenn. Code. Ann. § 47-18-109(a)(3).  In determining whether to award treble damages under the statute, courts are to consider "(A) The competence of the consumer or other person; (B) The nature of the deception or coercion practiced upon the consumer or other person; (C) The damage to the consumer or other person; and (D) The good faith of the person found to have violated this part." Tenn. Code. Ann. § 47-18-109(a)(4).

Therefore, the non-attorneys' fees-related damages MAA is entitled to amount to $207,136.32.

## II.     Damages for Attorneys' Fees and Costs

The Court also previously determined that MAA is entitled to damages in the form of its attorneys' fees and costs, which are recoverable under both the TCPA and the Lanham Act. See Tenn. Code Ann. § 47-18-109(e)(1) ("Upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs."); 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.")  Therefore, the only determination left for the Court to make is whether the $383,613.61 in attorneys' fees and costs outlined in MAA's supplemental filings are reasonable.

District courts maintain broad discretion to determine the reasonableness of an attorney's hourly rate as a component of the lodestar computation. Wayne v. Vill. of Sebring, 36 F.3d 517, 533 (6th Cir. 1994). To make that determination, the Court must assess "the prevailing market rate in the relevant community," which is "that rate at which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 350 (6th Cir. 2000).  A court may consider "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." Van Horn v. Nationwide Prop. and Cas. Ins. Co., 436 F. App'x 496, 499 (6th Cir. 2011).  In calculating the appropriate amount of attorneys'

---

Mr. Philipson's numerous filings in this case demonstrate that he is competent.  His acts are egregious, as he, among other things, repeatedly infringed on MAA's intellectual property, impersonated MAA's employees, and harassed them and MAA's attorneys in a variety of significant and elaborate ways.  The damages MAA, its employees, and its counsel suffered were significant as is detailed herein and in the Court's previous orders.  Finally, Mr. Philipson's repeated deleterious actions cannot be said to have been made in good faith.

fees, it is well established that paralegal fees are also recoverable.  See, e.g., Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 580–81 (2008).

The Supplemental Declaration of Paige Waldrop Mills, MAA's lead attorney on the matter, included an exhibit that detailed the hours spent by her and the other attorneys and staff that worked on the matter, and their rates for the work that they completed.  (See ECF No. 111-1.)  The rates range from $415 to $675 per hour for attorneys, $295 to $380 per hour for litigation technology specialists and managers, and $275 to $300 for paralegals.  (Id. at PageID 2052.)

MAA also submitted the Declaration of Randall D. Noel, an attorney with Butler Snow, LLP, in support of its claim for fees.  (ECF No. 112.)  Noel asserted that he has practiced law in Memphis for more than forty years and is admitted to practice before all U.S. District Courts in Tennessee, Mississippi, and Arkansas, as well as the U.S. Courts of Appeals for the Fifth and Sixth Circuits and the U.S. Supreme Court.  (Id. at PageID 2056.)  Noel opined that, after reviewing the docket, Mills's declaration and attached exhibit, and based on his professional experience and practice, the rates charged by MAA's attorneys and their colleagues are within the prevailing market rates and the hours they spent on this matter were reasonable and necessary to achieve the outcome obtained.  (Id. at PageID 2060.)

Based on these submissions, the nature of the case, the skills of counsel, the market rates for attorneys and related staff in the community, and the fact that Mr. Philipson has not contested the hourly rates charged, the Court concludes that MAA has met its burden of establishing the reasonableness of the hourly rates.

The Court also finds that Plaintiffs have met their burden of establishing the reasonableness of hours spent on the case.  Attorneys seeking fees and costs are obligated "to

7

'maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended.'" Smith v. Serv. Master Corp., 592 F. App'x 363, 371 (6th Cir. 2014) (quoting Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990)). While not required to record the minute-by-minute details of their work, counsel should "identify the general subject matter of . . . time expenditures." Id. (quoting Hensley, 461 U.S. at 437 n.12.). Thus, billing records will suffice when they offer "'sufficient detail and probative value' for the court to determine the legitimacy of the hours expended." Monroe v. FTS USA, LLC, No. 2:08-cv-02100-JTF-CG, 2014 WL 4472720, at *8 (W.D. Tenn. July 28, 2014) (citing Imwalle, 515 F.3d at 553–54 (finding time entries such as "conference with," "research," "review file," "review documents," etc. sufficiently descriptive when read in context of whole billing statement and the litigation timeline)).

The description of the 665.1 hours the lawyers and staff spent on this matter are painstakingly detailed in six-minute increments. (See ECF No. 111-1 at PageID 2052–54.) Mr. Philipson has asserted that the Court's actions have prolonged the litigation and driven up its costs. (See ECF No. 105 at PageID 1829.) However, he mostly has himself to blame for any increased time MAA's attorneys and staff had to spend on the matter, and the costs MAA correspondingly incurred, due to his failure to cooperate in the litigation. Mr. Philipson's obstinance is illustrated by, although not confined to, his failure to respond to motions and discovery requests, his failure to attend Court-scheduled hearings, and his repeated filings that frequently bordered on the frivolous, but nevertheless necessitated MAA's counsel's expenditure of time.[6] Beyond this, Mr. Philipson's failure to specifically object to any of the billing entries

---

[6] For instance, MAA's attorney's and staff spent 7.4 hours, incurring $4,195 in costs, addressing Mr. Philipson's baseless last-minute objections to his deposition, which eventually was conducted as planned. (See ECF No. 111-1 at PageID 2053.) It also incurred $2,695 in fees

8

offered by MAA renders his blanket, unsupported objections baseless.

Given the foregoing, the Court finds that the attorneys' fees and costs incurred by MAA are reasonable, and total $383,613.61. When the $207,136.32 for its non-attorneys' fees are added to this total, MAA is entitled to $590,749.93.

### III.     Pre- and Post-Judgment Interest

Finally, the Court previously found that Mr. Philipson was liable for pre- and post-judgment interest on all amounts to which Plaintiff is due. (ECF No. 97.)

The post-judgment interest rate "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a). The pre-judgment interest rate shall be calculated using the same formula. See Wallace v. FedEx Corp., No. 08-2145-V, 2011 WL 13274366, at *3 (W.D. Tenn. May 2, 2011) ("An approved method for calculating prejudgment interest is the rate used for postjudgment interest under 28 U.S.C. § 1961.") (citing Ford v. Uniroyal Pension Plan, 154 F.3d 613, 619 (6th Cir. 1998)). All damages, including reasonable attorneys' fee and costs, are subject to interest. See Caffey v. Unum Life Ins. Co., 302 F.3d 576, 589 (6th Cir. 2002).

Post-judgment interest shall be calculated beginning May 6, 2024, the date the Court entered its Order Granting Motion for Sanctions of Judgment and Granting in Part Motion for Permanent Injunction. (ECF No. 97.) See Caffey v. Unum Life Ins. Co., 302 F.3d 576, 591 (6th Cir. 2002) ("Postjudgment interest on an award of legal fees begins to run from the date of the

---

attending a Court-ordered mediation with Chief Magistrate Judge Tu M. Pham that Mr. Philipson failed to attend without warning. (Id.) The examples of similar instances are legion within the billing entries.

initial judgment recognizing plaintiff's unconditional right to receive legal fees, not from the judgment that ultimately quantifies the fee award.") (citing Associated Gen. Contractors of Ohio, Inc. v. Drabik, 250 F.3d 482, 495 (6th Cir. 2001)). The applicable post-judgment interest rate is therefore 5.19%. See https://perma.cc/DB4Q-BDSQ. MAA shall be entitled to post-judgment interest at the above rate until the damages are paid in full.

The Court finds that an appropriate triggering date for pre-judgment interest is April 3, 2023, the day MAA filed its complaint. (ECF No. 1.) Pre-judgment interest on $590,749.93 for thirteen months, i.e., April 3, 2023, through May 6, 2024, at the 5.19% rate outlined above, equals $33,214.91. See https://perma.cc/PT2P-S42X.

## CONCLUSION

Consistent with the foregoing, MAA is entitled to $623,964.84. That includes $590,749.93 in damages, attorneys' fees, and costs, and $33,214.91 in pre-judgment interest. MAA shall also be entitled to post-judgment interest at a rate of 5.19% on the damages, attorneys' fees, and costs awarded, consistent with the above.

Because the Court is contemporaneously entering Judgment, Mr. Philipson's Motion for Entry of Judgment is **GRANTED**.

**IT IS SO ORDERED,** this 1st day of November, 2024.

                                                 s/ Sheryl H. Lipman
                                                 SHERYL H. LIPMAN
                                                 CHIEF UNITED STATES DISTRICT JUDGE