IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 2:23-cv-2186-SHL-cgc |
| DENNIS MICHAEL PHILIPSON, | ) ) ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S RULE 60(b)(6) AND 60(d)(3) MOTION FOR RELIEF FROM JUDGMENT AND REQUEST FOR REASSIGNMENT PURSUANT TO 28 U.S.C. §§ 144 & 455**

Before the Court is pro se Defendant Dennis Michael Philipson's Rule 60(b)(6) and 60(d)(3) Motion for Relief from Judgment, filed May 19, 2025. (ECF No. 186.) Mr. Philipson also seeks to have the Motion referred to a judge other than the undersigned, pursuant to 28 U.S.C. §§ 144 & 455, and attaches an affidavit in support of his request. (Id. at PageID 186; ECF No. 186-2.) Plaintiff Mid-America Apartment Communities, Inc. ("MAA"), responded on June 4, 2025. (ECF No. 193.) For the reasons that follow, the request for recusal under 28 U.S.C. §§ 144 & 455 is **DENIED**. The motion for relief from judgment is also **DENIED**.

**BACKGROUND**

The facts in this case have been detailed in several of the Court's previous orders (see, e.g., ECF Nos. 69 & 94), as well as the Sixth Circuit's recent decision that denied Mr. Philipson's motion for sanctions and to supplement the record, affirmed this Court's judgment, and denied as moot Mr. Philipson's other motions (ECF No. 197).

In relevant part, this case began when MAA filed a complaint against John Does #1-2, alleging claims under the Lanham Act, 15 U.S.C. § 1051 et seq., the Anticybersquatting

Consumer Protection Act, 15 U.S.C. § 1125(d), common law infringement and unfair competition and the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-104 et seq. (ECF No. 1 at PageID 1.) MAA's amended complaint named Mr. Philipson, a former MAA employee, in place of the John Doe Defendants. (ECF No. 16.) The Amended Complaint added additional claims against Mr. Philipson, including unfair competition, misappropriation, deceptive trade practices, fraudulent misrepresentations, defamation, tortious interference with prospective business relationships, deceit, negligence per se related to acts of cyber harassment, and claims under the Tennessee Personal and Commercial Computer Act of 2003. (Id.)

Despite the serious allegations leveled against him, Mr. Philipson only sporadically participated in the litigation. The Court issued multiple show cause orders in an attempt to get him to participate in the proceedings, including after he failed to respond to MAA's motions for preliminary and permanent injunctions and judgment. Mr. Philipson ignored those orders, which ultimately resulted in the Court finding him in contempt (ECF No. 94), and determining that the uncontested factual allegations made against him were deemed true. On May 6, 2024, the Court entered an Order Granting Motion for Sanctions of Judgment and Granting in Part Motion for Permanent Injunction, and directed MAA to submit a description of its damages. (ECF No. 97.)

On June 13, 2024, Mr. Philipson sent several emails to the Court's ECF mailbox in which he alleged, among other things, that the undersigned had a conflict of interest based in part on the fact that one of her law clerks formerly worked at the law firm that represents MAA. On June 21, 2024, the Court entered an Order Addressing Email to the Court, in which it explained why no such conflict existed. (ECF No. 103.) That conclusion was supported by the Sixth Circuit's recent decision, which explained that Mr. Philipson's arguments that the undersigned was biased

2

against him and that her law clerk had a conflict of interest fail "because Philipson has not established any basis for questioning the district court judge's impartiality, see United States v. Liggins, 76 F.4th 500, 505 (6th Cir. 2023), and he has not shown that the law clerk was biased against him or violated any ethical rules simply by working on a case that involved his former firm where the case was not filed until well after he left the firm." (ECF No. 197 at PageID 3445.)[1]

On June 21, 2024, Mr. Philipson filed a Response to Order Addressing Email to the Court, in which he explained, "[f]irstly, I wish to unequivocally state that my email was not a request for recusal. Instead, it was intended to bring to the Court's attention the prior relationship between the attorneys at Bass, Berry & Sims PLC and the judicial law clerk involved in this case." (ECF No. 105 at PageID 1827.) He later reiterated that he "want[ed] to make it abundantly clear that my communications with this court were never intended as a request for recusal. Instead, I have repeatedly called for a swift and decisive judgment in this matter." (Id. at PageID 1829.) To that end, on June 24, 2024, Mr. Philipson filed a Motion for Entry of Judgment to Terminate Proceedings Due to Perceived Procedural Misconduct, Judicial Bias, and Whistleblower Retaliation by Mid-America Apartment Communities, Inc., Employees and Affiliates. (ECF No. 106.)

But on July 3, 2024, before the Court could rule on that motion, Mr. Philipson appealed the Order Granting Motion for Sanctions of Judgment and Granting in Part Motion for

---

[1] Mr. Philipson had also previously raised similar bias-related allegations against the undersigned in a complaint of judicial misconduct filed with the United States Court of Appeals for the Sixth Circuit. (See ECF No. 186-1 at PageID 3238.) The Chief Judge of the Sixth Circuit dismissed that complaint and explained, among other things, that, as to the undersigned, Mr. Philipson "fails to support his allegations of bias and misconduct with credible facts," and that Mr. Philipson's complaints about the undersigned's law clerk "lack[ed] sufficient evidence to raise an inference that misconduct has occurred." (Id. at PageID 3236, 3237.)

3

Permanent Injunction. (ECF No. 110.) On September 5, 2024, the Sixth Circuit denied the appeal because it was not a final judgment, and because, to the extent Mr. Philipson sought to appeal the permanent injunction, his appeal was untimely. (ECF No. 120.)

On November 1, 2024, the Court granted Mr. Philipson's Motion for Entry of Judgment, and determined that MAA was entitled to $590,749.93 in damages, attorneys' fees, and costs, $33,214.91 in pre-judgment interest, and post-judgment interest at a rate of 5.19% on the damages. (ECF No. 122.) Mr. Philipson appealed that judgment on December 2, 2024. (ECF No. 126.) The Sixth Circuit denied that appeal and entered judgment against Mr. Philipson on June 9, 2025. (ECF Nos. 197 & 198.)

Before the Court addresses Mr. Philipson's motion for relief from this Court's November 1, 2024 Judgment, it addresses Mr. Philipson's request to have the undersigned recuse herself and to have this matter assigned to a different judge.

I.  ANALYSIS

A. Recusal Under 28 U.S.C. §§ 144 & 455

Mr. Philipson seeks to have this matter assigned to a different judge. As a starting point, "a judge is presumed to be impartial, and the party seeking disqualification 'bears the substantial burden of proving otherwise.'" Scott v. Metro. Health Corp., 234 F. App'x 341, 352 (6th Cir. 2007) (quoting United States v. Denton, 434 F.3d 1104, 1111 (8th Cir. 2006)). "The burden is not on the judge to prove that he is impartial." Id. (citing In re McCarthey, 368 F.3d 1266, 1269 (10th Cir. 2004)).

Although Mr. Philipson expressly disclaimed the idea that his June 13, 2024 emails sought recusal of the undersigned (see ECF No. 105), the Court's June 13, 2024 Order addressing that email explained how recusal was inappropriate under § 455 (ECF No. 103). To

4

the extent that Mr. Philipson now formally seeks recusal of the undersigned based on § 455, the analysis from the previous Order remains applicable.

To the extent that Mr. Philipson seeks to have the matter transferred to another judge pursuant to § 144, his request is improper for multiple reasons. The statute provides that,

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

"For purposes of § 144, a district court is required to accept the factual allegations as true but the court may only credit facts that are 'definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient.'" Scott, 234 F. App'x at 352 (quoting Hoffman v. Caterpillar, Inc., 368 F.3d 709, 718 (7th Cir. 2004)). A § 144 affidavit "must state factual allegations with particularity as to time, person, place, and circumstances." Id. "A § 144 affidavit is timely if it is submitted 'at the earliest moment after the movant acquires knowledge of the facts demonstrating the basis for such disqualification.'" Scott, 234 F. App'x at 352.

"[A]lthough § 144 on its face appears to require automatic disqualification once the affidavit is filed . . ., a district court judge has a duty to examine the affidavit to determine whether it is timely and legally sufficient." Easley v. Univ. of Michigan Bd. of Regents, 853 F.2d 1351, 1355–56 (6th Cir. 1988) (quoting In Re City of Detroit, 828 F.2d 1160, 1164 n.2 (6th Cir. 1987)) (internal citation omitted). Absent strict compliance, "abuse would be rampant under

5

a statute heavily favoring recusal." Harris v. Wells Fargo Bank, No. 2:21-cv-02558-JTF-tmp, 2021 WL 6332769, at * (W.D. Tenn. Oct. 13, 2021) (citing Scott, 234 F. App'x at 352).

A motion pursuant to § 144 is inappropriate where, as here, the matter for which a party seeks a judge's recusal has already been decided on the merits. See Knapp v. Kinsey, 235 F.2d 129, 131 (6th Cir. 1956), reh'g denied 235 F.2d 129 (6th Cir.), cert. denied 352 U.S. 892 (1956) ("Section 144, Title 28 U.S. Code was not applicable to this case in which the claimed bias or prejudice was first disclosed during the trial. Under the circumstances the remedy can not be by a change of judges during the trial; it necessarily becomes a matter of alleged prejudicial error and for correction by the Court of Appeals."); see also United States v. Hoffa, 245 F. Supp. 772, 776 (E.D. Tenn. 1965) (rejecting a motion pursuant to a § 144 affidavit submitted eighteen months after a trial in the matter, and explaining that "[t]he section permits only the affidavit of a party . . . must be based upon facts antedating the trial, not those occurring during the trial") (quoting Berger v. United States, 255 U.S. 22 (1921)).

None of Mr. Philipson's concerns are appropriately addressed in a § 144 motion given the procedural posture of this case, that is, with the judgment having been entered more than five months prior to his filing. But even if a § 144 motion were procedurally proper, Mr. Philipson's § 144 filing is untimely, as Mr. Philipson cannot be said to have raised the alleged biases "at the earliest moment after [he] acquire[d] knowledge of the facts demonstrating the basis for such disqualification." Scott, 234 F. App'x 352.

Indeed, most of the bias-related allegations that Mr. Philipson raises in his May 19, 2025 § 144 affidavit are allegations that he raised with the Sixth Circuit as early as January 3, 2024 (see ECF No. 186-1 at PageID 3238), and they are allegations that have been rejected by multiple tribunals, most recently by the Sixth Circuit in its June 9, 2025 order.

6

In his affidavit, Mr. Philipson alleges that there was an "undisclosed conflict of interest involving [the undersigned's] law clerk" (ECF No. 186-2 at PageID 3287); that metadata revealed that the law clerk created several orders entered in this case (id. at PageID 3290); that there were "procedural irregularities" during the early proceedings in this case that infringed upon Mr. Philipson's due process rights (id. at PageID 3292); that MAA and its counsel have "leveled extraordinary personal accusations" against him (id. at PageID 3293); that "from [his] perspective" the undersigned exercised a "clear overreach of judicial authority" while his case was on appeal to the Sixth Circuit (id. at PageID 3295); that there was a "systematic favoritism shown toward MAA and its counsel," which included a failure to accommodate Mr. Philipson's claimed disabilities (id. at PageID 3296–97); that the undersigned's "approach to enforcement and sanctions . . . was, in [his] opinion, extraordinarily punitive and coercive" (id. at PageID 3298); that the undersigned became "even more stern and unsympathetic" toward him after he made judicial misconduct complaints against her (id. at PageID 3300); that the Court addressed his June 13, 2024 email as a motion, when it was never intended to be a formal filing (id. at PageID 3301); and that the Court addressed his June 13, 2024 email with "formalistic responses aimed at protecting the Court's interests" (id. at PageID 3304).

Mr. Philipson filed his § 144 affidavit in support of his recusal motion on May 19, 2025, many months, and sometimes more than a year after he first learned of them. Even if Mr. Philipson's § 144 affidavit had been submitted at a procedurally proper time of this litigation—which it was not—his failure to timely file his § 144 affidavit is fatal to his request to have the undersigned recused from the case. Mr. Philipson's motion for recusal under §§ 144 and 455 are **DENIED**.

Having addressed this threshold issue, the Court turns to the Rule 60 arguments.

B. Rule 60(b)(6)

Federal Rule of Civil Procedure 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding," under certain circumstances. In addition to specific delineated reasons, Rule 60(b)(6) provides a catchall provision that allows a court to relieve a party from a final judgment for "any other reason that justifies relief." This catchall provision "applies only in 'exceptional or extraordinary circumstances where principals of equity mandate relief.'" Miller v. Mays, 879 F.3d 691, 698 (6th Cir. 2018) (quoting West v. Carpenter, 790 F.3d 693, 696–97 (6th Cir. 2015)). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." BLOM Bank SAL v. Honickman, 605 U.S. ––––, No. 23-1259, 2025 WL 1583305, at *4 (U.S. June 5, 2025) (quoting Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)). A motion under Rule 60(b) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Mr. Philipson argues that he is entitled to relief under Rule 60(b)(6) because "[t]he totality of events – from the undisclosed conflict of the law clerk, to the retaliatory and punitive nature of the injunction, to the false allegations and personal attacks on Mr. Philipson, to the irregular post-judgment actions – create a situation unlike the ordinary run of cases. Any one of these factors alone might not be sufficient for Rule 60(b)(6) relief in isolation, but in combination they constitute a perfect storm of injustice." (ECF No. 186 at PageID 3175.) MAA asserts that Mr. Philipson's motion under Rule 60(b) was untimely and, even if it were not, it should be denied as unmeritorious. (ECF No. 193.)

Determining whether Mr. Philipson's motion was timely is a "fact-specific determination" that considers his "diligence in seeking relief." Miller, 879 F.3d at 699 (citations omitted). "[A] moving party must articulate a reasonable basis for delay" in seeking relief under

8

Rule 60.  Tyler v. Anderson, 749 F.3d 499, 510 (6th Cir. 2014) (citing In re G.A.D., Inc., 340 F.3d 331, 334 (6th Cir. 2003)).

The judgment was entered in this case on November 1, 2024.  (ECF No. 123.)  Mr. Philipson filed his Rule 60 motion on May 19, 2025, more than six months later.  (ECF No. 186.) In the interim, Mr. Philipson filed more than three dozen entries on the docket, including an appeal to the Sixth Circuit Court of Appeals that articulated many of the same bases he asserts in his Rule 60 motion.  In other words, while Mr. Philipson may have been diligent in seeking a variety of types of relief from this Court and the appellate court in the months between the entry of the judgment and his motion to set it aside, he cannot be said to have been diligent in his pursuit of his motion to set aside the judgment.  This is especially true considering that he made similar arguments to the Sixth Circuit months ago, both in his first appeal on July 3, 2024 (ECF No. 110), and in his second appeal on December 2, 2024 (ECF No. 126).  Moreover, Mr. Philipson has not articulated any basis for the delay in seeking to have the judgment set aside. Given the foregoing, Mr. Philipson's lack of diligence is sufficient to deny him relief under 60(b)(6).

But even if the delay of more than half a year did not provide a basis for denying the Motion, it is also without merit and does not come close to qualifying as the sort of "extraordinary" and "narrow circumstances" that warrant relief under Rule 60(b)(6).  See BLOM Bank SAL v. Honickman, 605 U.S. ——, No. 23-1259, 2025 WL 1583305, at *4 (U.S. June 5, 2025).

Mr. Philipson does not assert that there has been a change in the law coupled with some other special circumstance that might warrant relief under Rule 60(b)(6).  See Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund, 249 F.3d 519, 524 (6th Cir. 2001).  Instead, he

9

argues, essentially, that this Court got it wrong when it entered judgment in MAA's favor, and that the decision was based on a multitude of unjust reasons. But the bulk of the arguments in Mr. Philipson's Motion are not new and have already been addressed, and rejected, in this and other fora.

For instance, Mr. Philipson has been voicing his complaint about the "undisclosed conflict of the law clerk" since at least January 2024. The claim is as baseless today as it was the first time he raised it for the reasons articulated by this Court and other authorities. (See ECF No. 103; ECF No. 186-1 at PageID 3236–37; ECF No. 197.) It does not provide a basis for relief from judgment.

He also argues that the judgment should be set aside because of the nature of the "retaliatory and punitive nature of the injunction." But the order granting the preliminary injunction was entered on March 19, 2024 (ECF No. 94) and the permanent injunction on May 6, 2024 (ECF No. 97), both more than a year before Mr. Philipson filed his motion to set aside.

Not only did Mr. Philipson wait more than a year to object to the preliminary and permanent injunctions, but he also was given multiple opportunities to contest them before they were entered and he did not do so. MAA asserted that Mr. Philipson engaged in a wide variety of illegal and harassing behaviors. It sought injunctive relief to prevent him from continuing to engage in the behaviors. Despite repeated attempts by the Court to convince Mr. Philipson to respond to these allegations, he did not challenge these assertions. He also did not challenge the relief sought in the injunctions to prevent him from doing so in the future. And he does not now suggest what elements of the injunction are punitive or retaliatory.

A review of the permanent injunction's provisions shows that his arguments here are without merit. In brief, the permanent injunction enjoined and barred Mr. Philipson and those

10

working in concert with him from engaging in the following activities: "creating or setting up any social media account or any other type of account in the name, or a confusingly similar name" of MAA (ECF No. 97 at PageID 1566); "attempting to access or take control of any social media account or any other type of account or device or to change the login credentials of any account or device, in the name of any MAA Person" without their permission (id.); applying for jobs or credit cards in the name of any MAA person without consent (id. at PageID 1567); "purchasing domain names that contain the MAA trademarks and/or from setting up and/or publishing a website that uses MAA's trademarks in an infringing manner" (id.); "setting up social media accounts, whether on LinkedIn or otherwise, that falsely purport to be a MAA-sanctioned account" (id.); "accessing or attempting to access MAA's computer systems or servers" (id.);  "contacting any individual MAA Person in-person or by phone, electronic mail, text message, social media, direct message, or any other method, without the express written consent of such person" (id. at PageID 1567–68); "committing any threats, stalking, cyberstalking or intimidating behavior as described in 18 U.S.C. § 2261A" (id. at PageID 1568); coming within 500 feet of any MAA office or parking structure (id.); publishing certain types of communications that communicated certain types of messages regarding MAA, its employees, or its attorneys (id. at PageID 1568–69); and requiring him to return to the company any confidential material regarding MAA that he had in his possession (id. at PageID 1569). Notably, the injunction included a provision that explained that it in no way limited Mr. Philipson's "right to make whistleblowing complaints or to otherwise communicate with a government agency, as provided for, protected under, or warranted by applicable law."  (Id.)[2]

---

[2] Mr. Philipson falsely asserts that the "injunction . . . effectively bars all communication with MAA—even lawful, protected whistleblower disclosures[.]"  (ECF No. 186 at PageID 3179.)

11

Ultimately, preventing Mr. Philipson from continuing to engage in these sorts of inappropriate—and in some instances illegal—actions that he never contested engaging in during the course of this litigation is neither punitive nor retaliatory. His arguments to the contrary do not warrant relief under Rule 60.

Mr. Philipson also asserts that the judgment should be set aside because "MAA's victory was built on allegations that are, in retrospect, highly suspect or demonstrably false." (ECF No. 186 at PageID 3177.) Mr. Philipson acknowledges that "[t]he Court's findings and injunction were based largely on an uncontested record," and asserts, without support and in contradiction of the record, that this was "since Mr. Philipson was unable to respond in time." (Id. at PageID 3177–78.) He asserts that certain allegations could have been tested through "[a] more balanced process (or evidentiary hearing)." (Id. at PageID 3178.)

As the record reflects, Mr. Philipson failed to attend multiple hearings at which he could have contested the allegations being made against him. (See ECF Nos. 72, 74, 89, 96 & 179.) He eschewed a "more balanced process" when he refused to participate in the litigation, despite repeatedly being given unrequested extensions to respond to and contest the allegations against him. Mr. Philipson has not previously and even now does not support his assertion that something other than his obstreperousness made him unable to respond to the motions MAA filed or the show cause orders the Court entered.

Mr. Philipson asserts that MAA's "success in obtaining the judgment was aided by what can be termed 'fraudulent misrepresentations' – stories or depictions that have since been called into doubt." (ECF No. 186 at PageID 3180.) Of course, it is Mr. Philipson and Mr. Philipson alone who has called the allegations into doubt and he has provided no evidence, merely baseless conjecture, to support his declaration. Even now, years after MAA began asserting allegations

12

against him, Mr. Philipson has failed to come forth with any evidence to show that the allegations are "highly suspect or demonstrably false." He failed to marshal any such evidence during the pendency of this litigation to support such a claim, and has not done so now in his effort to set aside the judgment. Overturning the judgment under Rule 60 is not warranted on this basis.

Finally, Mr. Philipson asserts that the judgment should be set aside because "[t]he Court's decision to press on with contempt and enforcement proceedings during the pendency of the appeal, while perhaps well-intentioned to uphold its orders, has created procedural chaos and potential unfairness that bolsters the case for Rule 60(b)(6) relief." (ECF No. 186 at PageID 3181.) The Court has created neither procedural chaos nor potential unfairness.

As the Court previously explained, if a "district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes." (ECF No. 162 at PageID 2807 (quoting Cincinnati Bronze, 829 F.2d 585, 588 (6th Cir. 1987).) Further, the Court also explained that, "[b]ecause the matter has not been stayed, this Court has the ability to enforce the judgment as to the relief MAA seeks as to Mr. Philipson's contempt and to the extent it seeks discovery in the aid of execution on its judgment." (Id. at PageID 2810 (citation omitted).) The Court abiding by the law and the Federal Rules of Civil Procedure does not provide a basis for granting relief under Rule 60(b)(6).[3] Mr. Philipson's argument to the contrary does not provide him a basis for relief from judgment.

---

[3] It is worth noting that Mr. Philipson's complaint of the "procedural chaos" that has accompanied the parallel proceedings in this case came in his motion seeking Rule 60 relief that he filed before this Court while his appeal remained pending in the Sixth Circuit Court of Appeals. He then argued that the Court did not have jurisdiction over his motion. (ECF No. 188.)

13

For all of the foregoing reasons, Mr. Philipson's motion for relief from judgment under Rule 60(b)(6) is **DENIED**.

C. Rule 60(d)(3)

Beyond the specific grounds warranting relief from a judgment or order under Federal Rule of Civil Procedure 60, the Rule also provides that it "does not limit a court's power to . . . set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "Fraud on the court refers to 'the most egregious conduct involving a corruption of the judicial process itself.'" Gen. Med., P.C. v. Horizon/CMS Health Care Corp., 475 F. App'x 65, 71 (6th Cir. 2012) (citing 11 Charles Alan Wright et al., Federal Practice & Procedure § 2870 (West 2011)). Bribing a judge, employing counsel to exert improper influence on the court, and jury tampering are the sorts of flagrant abuses that support a finding of fraud on the court. Id. Ultimately, such a finding

> embrace[s] only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

Id. (quoting Demjanjuk v. Petrovsky, 10 F.3d 338, 352 (6th Cir. 1993)). "[A] party seeking to show fraud on the court [must] present clear and convincing evidence of the following elements: "1) [conduct] on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court." Id. (quoting Johnson v. Bell, 605 F.3d 333, 339 (6th Cir. 2010)).

Mr. Philipson has failed to demonstrate any of the elements to support his claim of fraud on the Court. He asserts two primary arguments that he argues warrant such relief. First, is "the concealment of the law clerk's conflict and the scrubbing of metadata, which was a deliberate act (or series of acts) by officers of the court (the Judge or her staff) to prevent the court – and the

14

parties – from learning relevant information that bore on the court's impartiality." (ECF No. 186 at PageID 3173.) Second, Mr. Philipson asserts that fraud was committed based on "the knowing submission of false accusations (e.g., the credit-card fraud story) and other defamatory misrepresentations by MAA's counsel, which were designed to mislead the court into issuing a harsher judgment and injunction than it otherwise would have." (Id.) Neither of these arguments provide a basis for relief.

Mr. Philipson asserts that "the involvement of [the undersigned's law clerk] and the concealment of this role are central to Mr. Philipson's claim of fraud on the court." (ECF No. 186 at PageID 3159.) As explained above, Mr. Philipson has made this same argument, repeatedly, and had it rejected by multiple tribunals. It remains meritless.

The Court's internal handling of its documents also does not somehow suggest impropriety or rise to the level of a fraud on the court. Neither Mr. Philipson nor any party to any litigation is entitled to the metadata associated with documents created in this or any other judge's chambers. Nor, for that matter, are parties entitled to examine the innerworkings of the undersigned's chambers and the processes by which it operates to, as Mr. Philipson suggests, "learn[] relevant information that bore on the court's impartiality." (Id. at PageID 3173.) Mr. Philipson's arguments that "scrubbing of metadata" from the undersigned's order can somehow constitute fraud on the court have no basis in law.

Mr. Philipson's assertions that MAA's counsel made misrepresentations to the Court also do not constitute a fraud on the court that would provide him a means for relief under Rule 60(d)(3). He asserts that MAA and its counsel "present[ed] false or unsupported accusations" to this Court, "to secure a desired outcome [constituting] fraud on the court." (ECF No. 186 at PageID 3164.) He argues that MAA painted a "false criminal narrative" as "a scheme to bias the

15

judge and thereby secure a draconian injunction and contempt finding that MAA could not have obtained on the merits alone." (Id.)

In his defense, Mr. Philipson denies having committed any federal crimes, and states that "[h]e does not recall engaging in any inappropriate conduct toward MAA employees." (ECF No. 186 at PageID 3162.) This equivocal denial resembles several of Mr. Philipson's statements from his deposition, which the Court outlined in its Order Granting Motion for Sanctions of Judgment and Granting in Part Motion for Permanent Injunction. (See ECF No. 97 at PageID 1563 n.2 ("So instead of sitting here and going through all this stuff and me saying I don't recall and all that, we can just switch it around because I'm just not going to recall anything anymore."); ("I don't recall any of this. So we can go through it one by one. I don't recall any of this, unfortunately."); ("I'm not going to deny anything."); ("Again, I'm not unequivocally denying anything right now. I don't – I have no recollection of doing it."); ("I don't recall a lot of the stuff. And if I did do it, . . . I don't like the way I'm being – the way this is portrayed. And some of it's pretty terrible. So it's making me think even I got more mental problems than I really do if I did do this.") (internal citations omitted).)

Although Mr. Philipson is now issuing half-hearted denials of having engaged in any inappropriate conduct toward MAA's employees, when given repeated chances to refute the allegations while the case was pending, either in his deposition or in response to MAA's motions, he remained silent. Mr. Philipson, like all litigants, is given the opportunity to respond to motions filed by the opposing party. After MAA filed a Motion for Preliminary Injunction on January 25, 2024 (ECF No. 81), he did not attend the February 8, 2024 status conference regarding the motion, and did not respond to the motion by his deadline to do so. The Court then issued an Order to Show Cause, in which it informed Mr. Philipson that a failure to respond

16

would result in the facts in the motion being deemed undisputed. (ECF No. 91 at PageID 1476.) Mr. Philipson did not respond. The Court deemed the facts undisputed.

A similar process played out after MAA filed its Motion for Sanctions of Judgment and Permanent Injunction. (ECF No. 92.) On March 19, 2024, the Court entered an order that, among other things, informed Mr. Philipson that if he did not respond to the Motion for Sanctions of Judgment and Permanent Injunction, "the Court will consider the motion undisputed and will rule accordingly." (ECF No. 94 at PageID 1539.) Mr. Philipson did not respond. The Court deemed the facts undisputed.

Mr. Philipson also failed to substantively respond to two motions that MAA filed seeking to find him in contempt for violating the permanent injunction. (ECF Nos. 113 & 158.) The Court ordered him to respond to the first contempt motion, explaining that a failure to do so would result in "the facts set forth in the Motion [being] deemed true." (ECF No. 124 at PageID 2232.) Mr. Philipson did not respond.

Mr. Philipson responded to the second contempt motion, but only to dispute the Court's jurisdiction over the motion. The Court set a Show Cause hearing on the motion for May 9, 2025, and explained that, "[i]f Mr. Philipson fails to attend the hearing, the facts set forth in the Second Contempt Motion will be deemed true, as they previously were for the First Contempt Motion[.]" (ECF No. 162 at PageID 2811.) Mr. Philipson informed the Court that he would not be attending the show cause hearing and, in fact, did not. (ECF No. 164.)[4]

---

[4] After judgment was entered against him, Mr. Philipson has filed dozens of documents on the docket, including many that suggest that he was not afforded due process during this litigation. Even now he asserts that vacating the judgment would "mean[] the matter could be litigated fairly and with proper process (for instance, before a different judge if appropriate, and with Mr. Philipson given an opportunity to actually contest the allegations against him)." (ECF No. 186 at PageID 3184.) As the foregoing illustrates, Mr. Philipson had numerous opportunities

17

As the foregoing illustrates, Mr. Philipson has had multiple opportunities to dispute the facts asserted in this case. He has not done so. He cannot now be heard to suggest that MAA presented false or unsupported accusations that would constitute fraud on the court.[5]

Establishing fraud on the court under Rule 60(d)(3) is a "truly extraordinary form of relief." Gen. Med., 475 F. App'x at 71. Mr. Philipson has failed to meet this high bar.

## CONCLUSION

For the foregoing reasons, Mr. Philipson's request to have this matter reassigned to another judge pursuant to 28 U.S.C. §144 or 455 is **DENIED**, as is his Rule 60(b)(6) and 60(d)(3) Motion for Relief from Judgment.

**IT IS SO ORDERED,** this 25th day of June, 2025.

                                            s/ Sheryl H. Lipman
                                            SHERYL H. LIPMAN
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

to "actually contest the allegations against him." His repeated assertions to the contrary do not change this fact.

[5] Mr. Philipson also appears to suggest that the Court's continuing to rule on motions related to MAA's efforts to execute on its judgment could constitute fraud on the court. (See ECF No. 186 at PageID 3167–68.) But as the Court explained previously, "[b]ecause the matter has not been stayed, this Court has the ability to enforce the judgment as to the relief MAA seeks as to Mr. Philipson's contempt and to the extent it seeks discovery in the aid of execution on its judgment." (ECF No. 162 at PageID 2810.) That analysis remains unchanged.