IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC., </br></br>Plaintiff, </br></br>v. </br></br>DENNIS MICHAEL PHILIPSON, </br></br>Defendant. | No. 2:23-cv-2186-SHL-cgc |

**ORDER GRANTING PLAINTIFF'S MOTIONS FOR CONTEMPT AND ESTABLISHING PROTOCOL FOR EVALUATING FUTURE INSTANCES OF ALLEGED CONTEMPTUOUS BEHAVIOR**

Before the Court are two motions for contempt, in which Plaintiff Mid-America Apartment Communities, Inc. ("MAA") alleges that Defendant Dennis Michael Philipson, who is proceeding pro se, violated the terms of the permanent injunction entered on May 6, 2024. (See ECF No. 97.)

MAA filed the first Motion for Contempt for Violating Permanent Injunction (the "First Contempt Motion") (ECF No. 113) on July 8, 2024, and the Second Motion for Contempt for Violating Permanent Injunction (the "Second Contempt Motion"), on April 10, 2025 (ECF No. 158). In the interim, on January 17, 2025, MAA filed the Supplemental Declaration of Alex Tartera in Support of MAA's Motion for Contempt, in which Tartera, MAA's Vice President for Cyber Security, detailed additional ways in which Mr. Philipson was allegedly continuing to violate the terms of the permanent injunction. (ECF No. 130.)

Mr. Philipson did not respond to either contempt motion, despite the Court entering Show Cause Orders requiring him to do so. (See ECF Nos. 124 & 162.) In each of the Show Cause Orders, the Court instructed Mr. Philipson that his failure to respond to those orders would result

in the facts set forth in MAA's contempt motions being deemed true, and the Court entering orders on the contempt motions based on those undisputed factual assertions. After Mr. Philipson failed to respond to the First Contempt Motion or the show cause order that gave him an additional opportunity to respond (see ECF No. 124), the Court conducted a hearing on the Second Contempt Motion, which Mr. Philipson did not attend[1] (ECF No. 179). Mr. Philipson's failure to challenge the veracity of any of the allegations related to his violations of the permanent injunction in either of the contempt motions renders those allegations deemed true.[2]

At the conclusion of the hearing on MAA's Second Contempt Motion, the Court invited MAA to submit a proposal that would establish a protocol for assessing penalties against Mr. Philipson for what were now the uncontroverted instances of his past violations of the permanent injunction, as well as a formula for assessing penalties for any future violations. On May 16, 2025, MAA emailed the Court its proposed approach in the form of a proposed order, which it also emailed to Mr. Philipson.

---

[1] Mr. Philipson's absence was no surprise, as he communicated with the Court on multiple occasions that he would not be in attendance, including on May 6, 2025, when Mr. Philipson emailed judges in this and the Sixth Circuit Court of Appeals, Court personnel, and opposing counsel, reiterating that he "will not be attending the hearing scheduled for September 9th. If it's still on your calendar, feel free to free up that time—perhaps even enjoy a round of miniature golf or something equally relaxing." (ECF No. 178-1 at PageID 3072.) Those communications, and several others, also violate the Order Directing Defendant to Cease Improper Communications With Court and its Personnel, which the Court entered on April 25, 2025. (ECF No. 169.) Mr. Philipson has been reminded on multiple occasions that he has been "directed to cease any communications with Court personnel, other than communications to the Clerk's office" related to appropriate filings, and that the Court has, and will continue, to refer any improper communications to the United States Marshals Service for investigation. (Id. at PageID 2920; see also ECF No. 236.)

[2] Mr. Philipson's violations of the permanent injunction include sending dozens of emails to MAA personnel, creating LinkedIn profiles that were likely to cause confusion among MAA customers, and filing repetitive whistleblower complaints on MAA's whistleblower platform. (See, e.g., ECF No. 113 at PageID 2070–74; ECF No. 130; and ECF No. 158 at PageID 2766–68.)

On August 27, 2025, the Court held a status conference in which it invited the parties to respond to any outstanding motions by September 3, 2025. (ECF No. 268.) Although Mr. Philipson submitted several filings on the docket in which he rehashed many of the complaints he has made throughout these proceedings, and alleged that there have been multiple potential conspiracies perpetrated against him (see, e.g., ECF No. 274-1 at PageID 4958, 4967–68, 4981), he did not specifically contest the contempt findings against him for his violations of the permanent injunction, or, for that matter, address MAA's proposed protocol that would govern any future violations.

Therefore, the Court hereby adopts the following protocol for assessing the penalties for past violations of the permanent injunction, and penalties that will be imposed against Mr. Philipson based on any future violations that are demonstrated to the Court, hopefully with Mr. Philipson participating in any proceedings. The Court notes that, although it adopts the general framework provided by MAA in its proposal, it finds that some of the proposed penalties are excessive, and modifies them accordingly.

Therefore, the Court will assess monetary sanctions in the amount of $50 per violation for each of Mr. Philipson's past violations of the permanent injunction. The total number of violations shall be determined upon Plaintiff's submission of a declaration of proof on the number of violations, including:

- Each distinct act of impersonating MAA or its employees;
- Each distinct act of maintaining or creating misleading social media accounts;
- Each unauthorized email sent to MAA employees or representatives;
- Each whistleblower submission received through MAA's internal reporting

3

platform;³

- Each distinct act of disseminating information in violation of Paragraph 11 of the Injunction;

- Any physical trespass as shown in the record;

- Any other violations of the permanent injunction Mr. Philipson has committed.

MAA shall provide the declaration of proof as to these past violations within seven days of the entry of this Order. Mr. Philipson may file a response to the declaration within seven days, but the response shall be limited to addressing the specific instances of violations outlined in MAA's filing. After considering MAA's declaration of proof and Mr. Philipson's response to it, the Court will use the formula outlined above to determine the penalties Mr. Philipson shall face for his past violations of the permanent injunction.

The Court further imposes the following escalating sanction structure if any violations of the permanent injunction occur after this Order is entered:

- For the first four violations after the date of this Order: $125 per violation;

---

³ The permanent injunction included a provision explaining that "[n]othing in this Order shall in any way limit Defendant's right to make whistleblowing complaints or to otherwise communicate with a government agency, as provided for, protected under, or warranted by applicable law." (ECF No. 97 at PageID 1569.) According to MAA's counsel, Mr. Philipson has filed hundreds of whistleblowing complaints on MAA's platform since the entry of the permanent injunction, the bulk of which tread the same familiar ground. Given that Mr. Philipson's employment with MAA ceased in March 2021, it is unsurprising that the allegations he has made in the portal would be repetitive. MAA represents that those allegations have all been investigated and deemed to be baseless. Therefore, the Court **ORDERS** that, going forward, Mr. Philipson shall not use MAA's whistleblower portal to allege any actions that he has previously complained of. To the extent Mr. Philipson has new, substantiated allegations to submit to MAA's whistleblower portal—which seems unlikely given that he has not been employed at MAA for more than four years—he shall be free to do so. Going forward, any use of the whistleblower portal that includes the submission of the same, previously submitted allegations will be deemed a violation of the permanent injunction's prohibition on harassing communications.

- For the fifth through tenth violations: $250 per violation;
- For each and every violation exceeding ten: $500 per violation.

Consistent with the terms of the permanent injunction, each of the following actions shall constitute a separate violation:

- Sending any email or other communication to any MAA employee, representative, or agent without that person's express written consent (with each recipient being a separate violation);
- Submitting any entry through MAA's internal whistleblower platform that contains previously asserted allegations;
- Creating or maintaining any online account, social media account or publication that falsely associates Mr. Philipson with MAA or uses confusingly similar identifiers;
- Attempting to access or take control of any social media account or any other account or device, or to change the login credentials of any account or device, in the name of any MAA Person without express permission;
- Applying for a job in the name of any individual MAA Person;
- Applying for creditscards or any other type of financial instrument or loan in the name of any MAA person;
- Purchasing domain names that contain MAA trademarks and/or setting up and/or publishing a website using MAA's trademarks;
- Accessing or attempting to access MAA's computer systems or servers;
- Committing any threats, stalking, cyberstalking or intimidating behavior as described in 18 U.S.C. § 2261A;
- Making any public statement that violates Paragraph 11 of the Permanent Injunction;

5

    or

- Entering within 500 feet of any MAA property.

To the extent that MAA believes Mr. Philipson violates the terms of the permanent injunction going forward, it shall submit such allegations, no more than once per month, along with a declaration of proof detailing each violation.  Mr. Philipson will have seven days to respond to any such submission.  To the extent that Mr. Philipson engages in repeated violations of the terms of the permanent injunction in the future, the Court will consider modifying the penalties outlined above, along with adopting further coercive measures, including, but not limited to, finding him in contempt subject to arrest and incarceration.

    **IT IS SO ORDERED,** this 12th day of September, 2025.

                                                    s/ Sheryl H. Lipman
                                                   SHERYL H. LIPMAN
                                                   CHIEF UNITED STATES DISTRICT JUDGE