**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-cv-2186-SHL-cgc |
| DENNIS MICHAEL PHILIPSON, | ) ) | |
| Defendant. | ) | |

**ORDER CHARGING DEFENDANT DENNIS MICHAEL PHILIPSON WITH
CRIMINAL CONTEMPT AND REFERRING CRIMINAL CONTEMPT MATTER TO
CLERK'S OFFICE FOR ASSIGNMENT**

On April 7, 2026, the Court entered an Order that, among other things, found Defendant Dennis Michael Philipson in civil contempt, and explained that his "repeated, contemptuous conduct appears to have defied this Court's 'lawful . . . order[s] . . . or command[s]' literally hundreds of times." (ECF No. 379 at PageID 8567 (quoting Jones v. Wright, No. 23-CV-0029, 2023 WL 12120812, at *3 (E.D. Tenn. Aug. 30, 2023), R. & R. adopted, 2024 WL 946663 (E.D. Tenn. Mar. 5, 2024)).) The Court required Mr. Philipson to show cause as to "how his contumacious conduct was not deliberate, and why he should not be referred to the United States Attorney's Office for the Western District of Tennessee for prosecution for criminal contempt." (Id.) The Court noted that if Mr. Philipson "fails to demonstrate that he should not be referred for prosecution for criminal contempt, the Court will issue notice of criminal contempt in accordance with Federal Rule of Criminal Procedure 42(a)(1) and refer Mr. Philipson to the United States Attorney for prosecution." (Id.)

Mr. Philipson responded to the show cause order on April 8. (ECF No. 380.) He argues that, "[o]n the present record, deliberate criminal contempt cannot lawfully be established beyond

a reasonable doubt, and referral would be procedurally improper and substantively unsound.  The

present record is not a clean criminal-contempt record." (Id. at PageID 8570.)  Mr. Philipson's

response also regurgitates many of the same arguments that he has been making since the

judgment was entered against him and in favor of Plaintiff Mid-America Apartment Communities,

Inc. ("MAA"), including that "this case is burdened by altered subpoena materials, missing

subpoena returns, the use of subscriber and IP data to convert a non-party witness into the named

defendant, an unresolved structural conflict issue inside chambers, the repeatedly requested 2021

MAA investigation report that Defendant maintains MAA represented existed, coercive settlement

activity while Defendant was jailed, and filing restrictions that prevented certain materials from

appearing on the docket." (Id. at PageID 8578.)

None of Mr. Philipson's oft-cited and generally debunked grievances address whether his

contumacious conduct was deliberate and thus warrant criminal contempt charges.  To the extent

Mr. Philipson offers any additional arguments relevant to that question, they are unpersuasive.

Ultimately, he asserts that "[c]riminal contempt is supposed to rest on a clear, specific,

procedurally clean showing of deliberate disobedience," which is not present here. (Id. at PageID

8578–89.)  On the contrary, the record could not be more clear that Mr. Philipson has, for years,

deliberately disobeyed this Court's orders and has carried on apace in spite of repeated warnings

to stop.  The Court charges him with criminal contempt consistent with the findings below.

## APPLICABLE LAW

"[A] court must use one of two procedures set forth under Federal Rule of Criminal

Procedure 42 to find someone in criminal contempt." United States v. Johnson, No. 24-3885,

2026 WL 18830, at *9 (6th Cir. Jan. 2, 2026).  First, "Rule 42(a) enables a district court to

punish '[a]ny person who commits criminal contempt . . .  after prosecution on notice' and sets

2

forth the process by which a district court may do so." Id. (citing Fed R. Crim. P. 42(a)(1)–(3)).

That process under 42(a) is as follows:

> Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.
> (1) Notice. The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:
>> (A) state the time and place of the trial;
>> (B) allow the defendant a reasonable time to prepare a defense; and
>> (C) state the essential facts constituting the charged criminal contempt and describe it as such.
> (2) Appointing a Prosecutor. The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.
> (3) Trial and Disposition. A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

Fed. R. Crim. P. 42(a).

Rule 42(b) provides the second mechanism for finding someone in criminal contempt, and allows a Court to "summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies." Fed. R. Crim. P. 42(b). A Court's contempt powers are also outlined in 18 U.S.C. § 401, which provides that

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Civil contempt differs from criminal contempt. "[T]he purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant," whereas "the

purpose of criminal contempt is punitive—'to vindicate the authority of the court.'" United States v. Bayshore Assocs., Inc., 934 F.2d 1391, 1400 (6th Cir. 1991) (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441 (1911)).  Contempt proceedings are sui generis. They are criminal in their nature, in that the party is charged with doing something forbidden and, if found guilty, is punished.  In re Mfrs. Trading Corp., 194 F.2d 948, 956 (6th Cir. 1952).

## ANALYSIS

Although Mr. Philipson has engaged in behaviors that likely warrant a summary contempt finding under Rule 42(b), in circumstances such as these, "[w]here time is not of the essence, Rule 42(a)'s notice and trial procedures" are "more appropriate to deal with" this sort of contemptuous conduct.  Johnson, 2026 WL 18830, at *10–11 (citing United States v. Wilson, 421 U.S. 309, 319 (1975)).

The Court has previously found Mr. Philipson in civil contempt, including for his violations of the permanent injunction.  In fact, Mr. Philipson's violations of the permanent injunction were so numerous and recurring that the Court established an escalating fine structure that would apply to future instances of contempt for his violations of the permanent injunction, and has assessed additional monetary penalties against him.  (See ECF Nos. 122, 298, 379.)  To be clear, Mr. Philipson continues to engage in dozens of acts that could likely be characterized as civil contempt.  Just last week, MAA documented at least 668 additional instances of Mr. Philipson's actions that it asserts violate the terms of the0p permanent injunction, all of which have occurred since December 2, 2026.  (See ECF No. 395 at PageID 8887.)  Mr. Philipson has yet to respond to those allegations, which may yet give rise to additional findings of civil contempt, and corresponding penalties.  But, even if they do, it will not prevent them from also

4

being the basis for findings of criminal contempt as well because "[t]he same conduct . . . may be subject to both criminal and civil contempt sanctions." Bayshore, 934 F.2d at 1400.

Regardless, Mr. Philipson has repeatedly demonstrated a disregard for the Court's orders and its authority in myriad ways that go beyond his hundreds of violations of the permanent injunction. Mr. Philipson offers several arguments as to why those actions do not amount to criminal contempt. These include his fundamental assertion that his "stated position throughout these proceedings has not been that he set out for the purpose of flouting judicial authority for its own sake." (ECF No. 380 at PageID 8574.) That argument is not only belied by the record, but it is also irrelevant. Mr. Philipson cannot consistently and repeatedly disregard this Court's orders, and escape the ramifications of those actions by claiming his flouting of judicial authority was justified.[1]

Mr. Philipson's argument that a charge of criminal contempt "is especially improper because the record reflects a repeated pattern of threats, pressure, and procedural asymmetry" is equally unpersuasive. (ECF No. 380 at PageID 8575.) What Mr. Philipson characterizes as a repeated pattern of threats and pressure has actually been this Court's repeated attempts to get him to cooperate in this litigation, and trying to fashion appropriate remedies for what turned out to be his inevitable non-compliance. As the Court has noted before, Mr. Philipson has suggested on multiple occasions that he would cooperate and abide by the Court's orders, and then, like Lucy plucking the football away from Charlie Brown at the last second, he does not.

This pattern has even been on display since the Court entered its most recent order finding Mr. Philipson in civil contempt and ordering him to show cause. Within three hours of

---

[1] Mr. Philipson also asserts that the "present record does not establish deliberate criminal contempt beyond a reasonable doubt." (ECF No. 380 at PageID 8573.) That determination will be for a jury to make.

the filing of that Order, Mr. Philipson sent an email to at least one Court employee—which, by itself, was a violation of this Court's previous orders prohibiting such communications—in which he stated, "I was hoping for criminal contempt.  Damn."  Then, a minute later, he sent another email to the same employee, among others, in which he invited criminal contempt proceedings, asserting that "if the Court believes criminal contempt is warranted, then proceed that way and end the pretense.  Refer it to the United States Attorney's Office and conclude this civil contempt theater."  (See ECF No. 397-30 at PageID 9355–56.)  Yet, in his formal response to the show cause order submitted the same day, Mr. Philipson asserts that a finding of criminal contempt is somehow improper.

Then, on the same day that he filed his response to the show cause order, he also filed a motion to allow the voluntary surrender of the materials that the Court ordered him to turn over. (ECF No. 381.)  But then the next day, as the Court was in the process of entering the order granting that motion, Mr. Philipson filed a notice withdrawing it.  (ECF No. 384.)  In spite of extending the time for Mr. Philipson to voluntarily surrender the materials (ECF No. 388), the end result is that he still has not done so and his deadline has passed.

Ultimately, this case is not marked by a repeated pattern of threats and pressure from the Court, but instead patience and judicious restraint.  It is true that the Court has long contemplated charging Mr. Philipson with criminal contempt, and warned him of the possibility.  It is also true that, despite having been given repeated opportunities to abide by this Court's orders, Mr. Philipson has declined to do so.  Mr. Philipson is the architect of his criminal contempt charge. His conduct has left the Court with no other choice than to proceed down the path it is now on.

To fend off a charge of contempt, Mr. Philipson trots out another familiar argument, namely that, because he has appealed an order of this Court to the Sixth Circuit and an order of

an Eastern District of Virginia court to the Fourth Circuit, "[t]he only appropriate course is to take no further action while the appeals run their course." (ECF No. 380 at PageID 8579.) He asserts that even if the Court has the authority and jurisdiction to find him in contempt, "restraint is the narrowest, safest, and most lawful course." (Id.) But not only does Mr. Philipson conflate civil contempt with criminal contempt, his pending appeals would not divest this Court's jurisdiction in either instance.

As Mr. Philipson is no doubt aware at this point, having been found in civil contempt multiple times by this Court, "[p]roceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause." Gompers, 221 U.S. at 444–45. Yet, "proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." Id.; see also Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 804 (1987) (explaining that, in cases involving criminal contempt charges, "[t]he prosecutor is appointed solely to pursue the public interest in vindication of the court's authority").

The criminal contempt charge is not, as Mr. Philipson suggests, "an informal extension of a private party's civil enforcement effort" (ECF No. 380 at PageID 8571), or "a substitute coercive device [being] deployed after the Court has already concluded that civil coercion failed" (id. at PageID 8572). It is true that a criminal contempt charge may incidentally result in a civil party's compliance, but that does not alter the punitive purpose of criminal contempt. After all, "if the proceeding is for criminal contempt and the [punishment] is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience," but those "indirect consequences will not change [punishment] which is merely coercive and remedial, into that which is solely punitive in character, or vice versa." Hicks on Behalf of Feiock v. Feiock, 485

U.S. 624, 635–36 (1988) (quoting Gompers, 221 U.S. 443.)  At bottom, the criminal contempt

charge is a result of Mr. Philipson's behaviors toward this Court's authority, and are an effort by

the Court to vindicate that authority.[2]

Mr. Philipson gets several things correct in his response to the order to show cause,

including his assessment that, at this point, "the contempt regime [has] stop[ped] looking

genuinely civil and start[ed] looking punitive."  (ECF No. 380 at PageID 8571.)  Criminal

contempt, by its nature, is punitive, often results in months spent in prison, and can, depending

on the nature of the contempt, be felonious.  See, e.g., United States v. Owens, 161 F.4th 439

(6th Cir. 2025); see also United States v. Johnson, No. 24-3885, 2026 WL 18830, at *11 (6th Cir.

Jan. 2, 2026) ("[S]entences exceeding six months for criminal contempt may not be imposed by

federal courts absent a jury trial or waiver thereof." (quoting Cheff v. Schnackenberg, 384 U.S.

373, 380 (1966))).

That is why, as Mr. Philipson also accurately points out, Federal Rule of Criminal

Procedure 42 establishes stringent formal criminal processes when someone is charged with

---

[2] Mr. Philipson sent a series of emails to the Court and opposing counsel in recent days, including one from May 1, in which he asserted "I am preparing a notice for the Sixth Circuit asking to voluntarily dismiss my appeal.  I will send it to counsel shortly, and counsel is welcome to file or transmit it to the Sixth Circuit on my behalf tonight if you are willing to do so. I also plan to overnight a copy directly to the Sixth Circuit Court of Appeals so the Court receives it."  He followed up with another email less than an hour later in which he attached his Sixth Circuit Notice and Motion for Voluntary Dismissal of Appeal.  The next day, he sent a follow-up email in which he stated "[p]lease disregard my prior request that counsel file, transmit, upload, or submit the Sixth Circuit document on my behalf.  Do not file the CA6 document.  Do not file anything for me in the Sixth Circuit or any other court.  If anything was accidentally filed or submitted based on my prior email, I will contact the Sixth Circuit Clerk's Office on Monday morning to make sure the record is corrected. Going forward, if I decide to file anything, I will file it myself."  Mr. Philipson does not appear to have dismissed the case currently pending before the Sixth Circuit, and, in fact, appears to have filed an additional appeal.  (See ECF No. 403.)  That most recent appeal filing also does not divest this Court of the jurisdiction to find Mr. Philipson in contempt for the violations outlined below.

criminal contempt.  There are three basic requirements when a Court brings criminal contempt

charges under Rule 42(a): (1) "notice," (2) "appointing a prosecutor," and (3) "trial and

disposition."  Fed. R. Crim. P. 42(a).  Under the Rule, the notice must (1) inform the defendant

of "the time and place of the trial," (2) "allow the defendant a reasonable time to prepare a

defense," and (3) "state the essential facts constituting the charged criminal contempt and

describe it as such."  Fed. R. Crim. P. 42(a)(1).

Accordingly, the Court hereby provides **NOTICE** to Mr. Philipson that the Court is

charging him with criminal contempt under 18 U.S.C. § 401(3).  The Court finds that the

essential facts constituting his criminal contempt are as follows:

- Failure to attend mediation with Chief Magistrate Judge Tu M. Pham (ECF No. 74);
- Failure to attend February 8, 2024 status conference (ECF No. 89), and failure to show cause as to why he did not appear (ECF No. 90);
- Failure to respond to Motion for Preliminary Injunction and failure to show cause as to why he did not respond (ECF No. 91);
- Failure to attend April 15, 2024 contempt hearing (ECF No. 96);
- Failure to respond to the Motion for Contempt for Violating Permanent Injunction and failure to show cause why he did not respond (ECF No. 124);
- Failure to respond to the Second Motion for Contempt for Violating Permanent Inunction and failure to show cause why he did not respond (ECF No. 162);
- Failure to attend May 9, 2025 show cause and contempt motion hearing (ECF No. 179);[3]
- Failure to abide by the Local Rules, including Local Rule 83.6(a) and (b), which prohibit communications with the presiding Judge and her staff (See ECF No. 236);[4]

---

[3] (See also ECF No. 164 at PageID 2821) (where Mr. Philipson wrote "I will not participate in the May 9 hearing"); (ECF No. 173 at PageID 3045) ("Accordingly, I will not appear on May 9, 2025.  My decision is not based on avoidance, but on principle.  I am not evading a lawful hearing—I am refusing to participate in a process that has no legal foundation and no legitimate judicial purpose.  A courtroom cannot compel attendance when the very basis for the proceeding—jurisdiction, neutrality, and due process—has been fatally  compromised."); (ECF No. 178 at PageID 3069) ("Plaintiff (sic) has made clear in multiple entries that he is not participating in this proceeding and maintains that any attempt to go forward with the May 9 hearing is unwarranted, unproductive, and an improper use of time and judicial resources.").

[4] (See also ECF No. 240 at PageID 4249) (where Mr. Philipson explained that he "sincerely and respectfully apologizes for his repeated direct communications with chambers.  At the time, he believed such contact was permissible so long as opposing counsel was copied and

- Failure to abide by this Court's order that directed him to "cease any communications with Court personnel, other than communications to the Clerk's office for the filings described above" (ECF No. 169 at PageID 2920);
- Failure to produce responses to discovery requests as ordered by the Court (ECF No. 181);[5]
- Failure to produce responses to discovery requests as ordered by the Court (ECF No. 202);[6]
- Violating the terms of the Permanent Injunction more than 1,500 times (ECF Nos. 298; 379);[7]
- Failure to appear at motion for contempt hearing (ECF No. 373);
- Failure to provide the Court with the electronic devices, storage media, and accounts as required by the Court (ECF No. 379).

Mr. Philipson asserts that the criminal contempt at issue here implicates Rule 42(a)(3), which provides that, "[i]f the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents." (ECF No. 380 at PageID 8573.) He asserts that "the present record

---

made fully aware. Defendant now understands that this interpretation was incorrect and accepts full responsibility for this error," before resuming his improper communications almost immediately).

[5] (See also ECF No. 182 at PageID 3083–84) (where Mr. Philipson wrote "I will not respond to the requested discovery. I will not prepare a defense for proceedings that have no legal or constitutional basis. . . . If this Court proceeds to hold me in contempt for exercising these rights, so be it. But let the record be clear: I have chosen not to comply, not out of disregard for the law—but out of refusal to dignify a proceeding that has abandoned it").

[6] (See also ECF No. 203 at PageID 3520) (where, in response to the June 25, 2025 second order to show cause and to produce discovery responses, Mr. Philipson declared that he "formally state[s] for the record that I will not be providing MAA with responses to the outstanding discovery requests. I will not participate further in these fraudulent proceedings. I will not dignify this perversion of justice with my compliance. . . . Being held in contempt by a court that holds justice in contempt is not a mark of shame. It is a badge of honor").

[7] (See also ECF No. 299 at PageID 5466) (where Mr. Philipson acknowledged "the specific conduct that the Court has determined to be in violation of the permanent injunction," "sincerely apologizes to the Court for any conduct that has violated or appeared to violate its prior orders," and "assures the Court that he has taken this ruling very seriously and will immediately cease all actions identified by the Court as prohibited").

10

overlaps directly with Defendant's criticisms of the Court, chambers, and the way this matter has been handled." (Id.)

To be sure, Mr. Philipson has been critical of the Court and its staff throughout this process, both in Court filings and elsewhere. But any disrespect or criticism that Mr. Philipson has levied toward the undersigned does not form the basis for any of the above-described acts that constitute Mr. Philipson's criminal contempt. The criminal contempt is based on Mr. Philipson's disregard for this Court's orders and its authority, an authority that is merely vested in the undersigned, and an authority that Mr. Philipson has repeatedly questioned and asserted he is not subject to.

Nevertheless, the Court refers the criminal contempt charge to the Clerk's Office for assignment to another judge in this District. Consistent with Rule 42(a)'s notice requirements, Mr. Philipson is entitled to a jury trial in this matter, as well as time to prepare his defense. The presiding judge, and not the undersigned, shall handle all matters in the criminal case, including the appointment of an assistant United States Attorney to prosecute the criminal contempt charge, the schedule, and any other matters related to Mr. Philipson's criminal contempt charge.

## CONCLUSION

Consistent with the foregoing, the Court provides **NOTICE** to Mr. Philipson that he is being charged with criminal contempt under Federal Rule of Criminal Procedure 42(a) and 18 U.S.C. § 401(3). The charge of criminal contempt will be referred to the Clerk's Office for assignment to another judge in this District.

**IT IS SO ORDERED,** this 5th day of May, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

11